**Loyd WADLEY, Appellant,**

v.

**CITY OF PURCELL, a Municipal Corporation; Ernie R. Thompson, Mayor of the City of Purcell; Ozie Weaver, City Manager of the City of Purcell; Melvin Lynn, Chief of Police of the City of Purcell, Appellees.**

No. 52026.

Court of Appeals of Oklahoma, Division No. 2.

Sept. 11, 1979.

Released for Publication by Order of Court of Appeals Oct. 11, 1979.

Benjamin E. Stockwell, Norman, for appellant.

Thomas G. Smith, Purcell, for appellees.

BRIGHTMIRE, Judge.

Was plaintiff, Loyd Wadley, discharged illegally entitling him to a writ of mandamus compelling the defending municipality, City of Purcell, Oklahoma, to reinstate him? We hold he was not.

I

Wadley was hired by the Purcell Police Department February 27, 1977, and worked as a patrolman until he received a letter dated September 7, 1977 from the city manager and the police chief advising him that "[d]ue to a shortage of funds our department is forced to reduce manpower. The position you now hold is being eliminated. Your two weeks notice starts September 7, 1977 and your last date of employment will be September 21, 1977."

On September 13 Wadley wrote city officials saying he considered the termination unlawful and contrary to the published per-

sonnel policies—a copy of which he did not have—and asked to be afforded a hearing before the "appropriate Personnel Review Board." He also objected to the cancellation of his enrollment in the Oklahoma Basic Police School he was scheduled to attend starting September 12, 1977 in order that he could be "certified" as a qualified police officer. The letter ended with the statement that he remained ready to continue his work as a patrolman and he expected his salary to continue to be paid.

Wadley, however, was not allowed to return to work and he brought suit seeking the issuance of a writ of mandamus by the court compelling the city officials to give him his job back with retroactive pay, re-enroll him in the Basic Police School and extend the 12 month limit for his certification if necessary.

Plaintiff founded his claim for relief on the provisions of a Purcell Employees Manual which was said to have been "approved and adopted by the City of Purcell [September 16, 1974] by Resolution No. 1974–5" and to have had "the force and effect of law, consistent with the City Charter . . ." The specific provision of the manual plaintiff relied upon is that dealing with "Separations" which states:

"Whenever there is a lack of work or lack of funds requiring reductions in the number of employees in a department or division of the City government, the required reduction shall be made in such job class or classes as the department head may designate, provided that employees shall be laid off in the inverse order of their relative length and quality of service. Within each [a]ffected job class all temporary employees shall be laid off before probationary employees, and all probationary employees shall be laid off before any permanent employees."

Plaintiff alleged he became a permanent employee on August 27, 1977 and because "at the time of [his] discharge there were certain employees of the Purcell Police Department still on probationary status who were not laid off," he had been terminated in violation of the quoted text. Claiming to be without a remedy at law, plaintiff asked the court to issue a writ of mandamus requiring the city and its officials to obey the law and reinstate him as a patrolman.

An alternative writ issued compelling defendants to reinstate plaintiff or to show cause on November 4, 1977 why they should not. Defendants filed an answer consisting of a general denial and several defensive allegations which included these: (1) the personnel manual contents are not "law" because (a) it was never enacted as an ordinance and (b) the manual itself recites that the rules it contains "are not intended to be hard and fast"; (2) "the hiring and firing of city employees is discretionary and, therefore, mandamus will not lie"; (3) there was a manual grounds for removal of plaintiff, namely, he "refus[ed] or neglect[ed] to pay just debts"; and (4) plaintiff has an adequate remedy at law for an alleged breach of contract.

Evidence at the hearing confirmed the basic facts alleged by plaintiff concerning the length of his employment, his employee status at the time of discharge, and date of termination. He had not, however, been given a copy of the Purcell Employees Manual when he took the job and apparently was unaware of its provisions until after his termination. And for that matter the city officials apparently did not act on the basis of it. Plaintiff conceded there were two certified officers on the force who still had a probationary status and he was the only uncertified officer with a permanent status. There was one probationary patrolman who was uncertified, said plaintiff, but he, it turns out, was in the hospital recovering from an accidental injury. There was a conflict in testimony as to whether or not plaintiff rejected reemployment as a dispatcher offered after he was laid off.

Plaintiff admitted he still owed the local hospital a debt evidently contracted several months earlier. He also admitted a check he had given in part payment of the bill bounced because it had been drawn on an account he had previously closed.

Plaintiff further testified he eventually went to work as a patrolman at a nearby

town for a monthly salary of $650—$200 more than he was making at Purcell.

## II

■ A writ of mandamus may be issued "to compel the performance of any act which the law specially enjoins as a duty, resulting from an office, trust or station . . . ." [1] To avail himself of the equitable remedy a plaintiff must show he has a clear legal right to it and that the law otherwise provides no adequate relief.[2] And being without an absolute right to the extraordinary remedy, he must abide the sound discretion of the court who should withhold relief if plaintiff's right to it is shadowy.[3]

■ The facts here breed doubt regarding plaintiff's entitlement to the relief sought. We are not persuaded, for instance, that the contents of the subject manual impose identifiable legal duties on the city officials with regard to employment practices. The manual, after a dubious birth was never legitimatized with the formality of an ordinance. The only indication of its governmental paternity in the record is a "resolution" of the "City of Purcell" which neither approves nor adopts the manual but merely recites that it "shall be submitted for adoption by resolution of the council, and that [its contents] shall have the force and effect of law." The resolving paragraph resolves nothing really. It reads: "Now, Therefore, Be It Resolved that the following rules, regulations, pay plan and position classification attached hereto, *are made a part of this resolution.*" (emphasis added) In other words the only thing resolved was that the manual became a part of the resolution—a rather pointless accomplishment. Mandamus will not lie to compel officials to comply with uncertain legal duties created merely by implication.

■ Furthermore, even if we were to assume the manual became "law," doubt still lingers about what correlative rights and duties its substantive provisions create. In its preface the manual recites that "[t]hese rules are not intended to be hard and fast" and thus suggests that some discretion is to be exercised by municipal officials in the hiring and firing of employees. The same suggestion inheres in the provision—quoted earlier as being relied on by plaintiff—which speaks of laying off employees in the inverse order of their relative length and "quality of service." Ordinarily mandamus will not issue to compel performance of a discretionary duty in a certain way. *State Highway Commission v. Green-Boots Const. Co.,* 199 Okl. 477, 187 P.2d 209 (1947).[4]

Plaintiff argues persuasively that the last sentence of the provision was intended by the author to qualify, or at least restrict, the exercise of any discretion granted the discharging authority within the designated priority employee classifications—temporary, probationary and permanent—as a result of which plaintiff, a permanent employee, possessed an enforceable legal right to be retained, in the event of a shortage of city funds, until after all temporary and probationary employees had been laid off. Well, maybe this is what the author meant. But the ambiguity, if nothing else, demonstrates a lack of the clarity necessary for compulsive judicial interference with official acts.

■ Finally, there exists yet another reason why the requested relief should be denied. It became evident during the trial that one of the grounds specified in the manual for discharging plaintiff existed at the time he was terminated—he had neglected to pay a just debt. Whether the city officials knew about the forbidden act

1. 12 O.S.1971 § 1451.

2. *Marland v. Hoffman,* 184 Okl. 591, 89 P.2d 287 (1939).

3. *Porch v. Hayes,* 205 Okl. 194, 236 P.2d 240 (1951).

4. *Green-Boots Const. Co.* also points out the court will grant relief against an arbitrary exercise of discretion. Of course, when one thinks about it, if one decision is arbitrary then if there is but one alternative the official in reality has no discretion.

at the time plaintiff was laid off is no more material than if it had later turned out that plaintiff had taken a bribe or converted city property—other specified grounds for removal of employees—a short time after being employed. Moreover, an indirect consequence of the disclosure of plaintiff's debt is that even if the court ordered that plaintiff be rehired, the city could immediately take steps to discharge him for cause—the unpaid debt—and it is elementary that a writ of mandamus will not issue to compel a useless act.

Affirmed.

BACON, P. J., and NEPTUNE, J., concur.