Anderson, Appellant, *v.* Philadelphia et al.

Argued January 13, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Harry A. Takiff,* with him *Myron Jacoby,* for appellant.

*Samuel Feldman,* Assistant City Solicitor, with him *Robert McCay Green,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 20, 1944:

Plaintiff, as owner of the Garden Court Plaza Apartments, 4701-4717 Pine Street, Philadelphia, is seeking to compel defendants, by means of a writ of mandamus, to remove *all* the ashes produced from heating the building's one hundred and thirty-one residential and business units. In her petition, plaintiff averred, *inter alia,* that the apartment house produced more than four hundred pounds of ashes weekly, and that the City, acting through the Department of Public Works, had refused to remove ashes from the premises in excess of this amount, although the ashes were placed in proper receptacles and these receptacles were easily accessible. The court below granted an alternative writ of mandamus but, upon motion of defendants, the writ was quashed and plaintiff's petition dismissed. The latter thereupon took this appeal.

We understand from the argument that the Bureau of Street Cleaning, a division of the Department of Public Works, has adopted a regulation limiting the collection of ashes by the City from a single unit to four hundred pounds per week. It is uncontroverted that, in the absence of a statute or ordinance establishing a duty on the part of the City to remove ashes from the buildings where they are produced, the duty rests primarily upon the owner or occupant. Plaintiff contends that an absolute duty is imposed on defendants by Article XX, Section 5, of the Act of June 25, 1919, P. L. 581, 53 PS section 3365, which reads as follows: "Any such city *shall have the power* to . . . collect ashes, . . . within the limits of such city, and to dispose of . . . ashes, . . . The council of such city *shall have the power* to authorize any existing department or bureau of such city to perform the work which such city is authorized to do, . . . . After the thirty-first day of December, one thousand nine hundred and twenty, . . . the collection of ashes, . . . within the limits of such city, and the disposal of . . . ashes, . . . shall be done directly by the city: Provided, That any such work may be done by contract when authorized by the council . . . with the approval of the mayor."

Article XX is entitled *"City Contracts"*, and Section 5 prescribes the terms and conditions under which the City may enter into agreements with private contractors for the cleaning of streets and removal of ashes and garbage. We are all of the opinion that this provision merely establishes a change in the City's previous practice of collecting ashes through the medium of contracts with private individuals, and constitutes a grant of power by which the City may perform that function.

The Legislature has merely reposed a discretionary *power* in the City to procure the removal of ashes in such a manner as they see fit and proper. The details, extent, or manner of performance by the Department of Public Works are not described. These matters are

subject to the judgment of the Department, and no positive and perfunctory *duty* to remove *all* ashes is imposed.

The plaintiff also relies upon an ordinance of the City approved December 26, 1924. That ordinance is entitled: "An Ordinance defining the duties of the Bureaus of Engineering and Street Cleaning and making certain transfers of employes, equipment, records and appropriations thereto from the Bureaus of Surveys and Highways." In Section One thereof it is provided as follows: "The Bureau of Street Cleaning, on and after January 1, 1925, shall have charge of the . . . removal and disposal of ashes . . . together with all other work which may be from time to time assigned to it by the Director of Public Works." It was pursuant to this power, we assume, that the regulation of the Bureau of Street Cleaning, referred to above, was adopted.

This ordinance was passed pursuant to the provisions of Article XX, Section 5, of the Act of 1919, giving Council the power to authorize any existing department or bureau to perform this function. No positive duty is thereby assumed by the City to remove all ashes from every structure within its limits regardless of the quantity. Furthermore, it would be unduly burdensome to require a city of the size of Philadelphia to remove *all* of the ashes produced by its many large apartments, hotels, industrial and commercial establishments. It has been the City's policy in the past to remove the ashes from private dwellings, but to require the owners or occupants of these other buildings to arrange for that service by private contract. The City clearly had the power to make reasonable classification, and the regulation of the Bureau of Street Cleaning established the dividing line between the unit from which the ashes would be removed by the City and the units from which the ashes would have to be removed by the owners.

This proceeding was instituted by a petition for writ of mandamus, and the courts have repeatedly held that mandamus can issue only where the defendant has

failed to perform a *ministerial* duty in the performance of which the exercise of neither judgment nor discretion is involved. *Chilli v. McKeesport School District et al.,* 334 Pa. 581, 583, 6 A. 2d 99. Where the City is clothed with discretionary powers, and has exercised those powers, mandamus will not lie to compel a revision of the decision resulting from such exercise of discretion, though in fact, the decision may be wrong. *Horowitz v. Beamish,* 323 Pa. 273, 275, 185 A. 760, and the cases cited therein. See also: *People ex rel. v. Chicago,* 277 Ill. 394, 115 N. E. 570; *Baltimore v. Hampton Court Co.,* 138 Md. 271, 113 A. 850.

Order of the court below is affirmed; costs to be paid by appellant.