547 A.2d 455

Honorable Edward J. Bradley et al., Plaintiffs. Honorable W. Wilson Goode et al., Intervenor-Plaintiffs *v.* Honorable Robert P. Casey et al., Defendants.

Heard August 18, 1988, before Judge MACPHAIL.

*Arlin M. Adams,* with him, *Carl A. Solano* and *Charles P. Hehmeyer, Schnader, Harrison, Segal & Lewis,* for plaintiffs.

*Seymour Kurland,* City Solicitor, with him, *Richard J. Gold,* First Deputy City Solicitor, *Arlene Bell,* Chief Assistant City Solicitor, and *Doris M. Leisch,* Chief Assistant City Solicitor, for intervenor-plaintiffs.

*Morey M. Myers,* General Counsel, with him, *Andrew H. Cline,* Deputy General Counsel, and *Timothy D. Searchinger,* Deputy General Counsel, for defendants, Robert P. Casey and Michael H. Hershock.

*Meredythe J. Y. Schrom,* Deputy Counsel to the State Treasurer, and *John S. Wellington,* Chief Counsel, for defendant, G. Davis Greene, Jr., Treasurer of the Commonwealth of Pennsylvania.

*C. Clark Hodgson, Jr.,* with him, *Craig Russell Blackman* and *Patrick T. Henigan, Stradley, Ronon, Stevens & Young,* for defendants, Mark S. Singel, K. LeRoy Irvis and the Pennsylvania General Assembly.

*Gregory R. Neuhauser,* Senior Deputy Attorney General, with him, *John G. Knorr, III,* Chief Deputy Attorney General, Chief of Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for Defendant Office of Attorney General.

OPINION BY JUDGE MACPHAIL, August 26, 1988:

On December 7, 1987, our Supreme Court filed its opinion in *County of Allegheny v. Commonwealth,* 517 Pa. 65, 534 A.2d 760 (1987).[1] In reversing this Court,[2] the Supreme Court held that those provisions of the Judicial Code[3] which required counties to fund the judicial system "is in conflict with the intent clearly expressed in the constitution that the judicial system be unified." *Id.* at 75, 76, 534 A.2d at 765.

Most pertinent for the matter now before us is the concluding language in that opinion:

> However, because this order entails that present statutory funding for the judicial system is now void as offending the constitutional mandate for a unified system, we stay our judgment to afford the General Assembly an opportunity to enact appropriate funding legislation consistent with this holding. Until this is done, the prior system of county funding shall remain in place.

*Id.* at 76, 534 A.2d at 765 (footnotes omitted).

In an accompanying footnote, the Supreme Court noted that its stay order was fashioned after a similar order appearing in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982). We note that the principal distinguishing characteristic between the two

---

[1] Reargument was denied January 19, 1988.

[2] *County of Allegheny v. Commonwealth,* 93 Pa. Commonwealth Ct. 112, 500 A.2d 1267 (1985).

[3] 42 Pa. C. S. §§2302, 3541, 3544, 3721 and 3722.

orders is that the order in *Northern Pipeline* was stayed until a fixed date. Our Supreme Court put no such limitation on its order.

On or about June 30, 1988, Honorable EDWARD J. BRADLEY and others responsible for the administration of the Philadelphia County court system filed two actions in mandamus: one in the Court of Common Pleas of Philadelphia County against the mayor of Phildadelphia and other city officials and the other in this Court against the Governor and other Commonwealth officials and members of the General Assembly.

The plaintiffs[4] then filed an application for extraordinary relief requesting our Supreme Court to assume plenary jurisdiction and decide the case.

On July 14, 1988, the Supreme Court filed a per curiam order granting extraordinary relief and directing that the two actions be consolidated for disposition by this Court within ninety days of the date of its order.

Preliminary objections have been filed by all Commonwealth parties in the action commenced in this Court at No. 1573 C.D. 1988. In view of that fact, notwithstanding the Supreme Court's order that the cases be consolidated for disposition, we initially determined that the preliminary objections would have to be resolved in order to decide which, if any, of the Commonwealth parties should remain in this suit.[5]

Because we received splendid cooperation from all counsel, we were able to receive briefs and hear oral argument on the preliminary objections on August 18,

---

[4] We normally refer to those parties who have instituted suit in our Court as petitioners and those who are defending as respondents. Inasmuch as all papers filed thus far identify the parties as plaintiffs and defendants we will continue those appellations in the interest of uniformity.

[5] We also permitted the city officials to intervene as party-plaintiffs in No. 1573 C.D. 1988.

1988. Those objections are now ripe for our disposition.[6]

Although the instant action seeks relief in the nature of compliance by defendants with our state Supreme Court's decision in *County of Allegheny*, we are constrained by the controlling language of that decision to dismiss the instant suit against Commonwealth defendants. We find that plaintiffs' complaint fails to meet the requirements for an action in mandamus and that plaintiffs lack standing to bring this suit.

## PRELIMINARY OBJECTIONS

The General Assembly raises several objections, the first of which is that the complaints challenge legitimate legislative activities for which the Assembly is immune under the Speech or Debate Clause of the Pennsylvania Constitution, Pa. Const. art. II, §15. The Assembly also asserts that inquiry into the legislature's failure to enact appropriations legislation presents a non-justiciable political question. The Assembly further claims that the *County of Allegheny* decision provides no basis for a cause of action inasmuch as the Court's stay of its judgment effectively left county funding intact. The Assembly's other objections assert that the complaints fail to state a cause of action for mandamus; that the Judges and the Intervenor—Municipal Parties lack standing; that any cognizable claim is premature; and that a judical determination of reasonably necessary funding for

---

[6] At oral argument the parties stipulated that the Commonwealth defendants' preliminary objections to the Judges' Complaint in Mandamus were to apply to the Intervenor—Municipal Parties' complaint as well. It also has been stipulated that *certain matters referred to at oral argument which are not part of the pleadings before us may be considered in our disposition of the preliminary objections.*

one county would impermissibly encroach upon legislative functions implicating statewide funding systems.

The preliminary objections of the Governor and the Secretary of Budget also challenge the Judges' standing and the justiciability of the questions involved, and additionally raise the defense of sovereign immunity. The Governor and Secretary further assert that the complaints fail to state a claim in mandamus because the plaintiffs have no legal right to funding due to the stay effected by the *County of Allegheny* decision; the asserted budget appropriations duties involve discretionary acts not warranting mandamus relief; the Governor has no duty to act until presented with legislation; and the plaintiffs' failure to follow established appropriations request procedures precludes any right to mandamus.

The Office of Attorney General filed preliminary objections on behalf of the Commonwealth, essentially challenging the justiciability of the questions involved and the sufficiency of the claim for mandamus relief.

The Treasurer also filed preliminary objections claiming that the complaint fails to state a cause of action for mandamus because he has no duty and is powerless to disburse funds absent appropriations legislation and a proper requisition for funds.

## DEMURRER

In addressing the preliminary objections and answers regarding failure to state a claim in mandamus, the parties' arguments are consolidated and the following discussion pertains to all the parties unless otherwise indicated. We are aware that preliminary objections cannot be sustained if the complaint sets forth all the requirements of mandamus, because all well-pleaded facts must be accepted as true. *Aiken v. Radnor Township Board of Supervisiors,* 83 Pa. Commonwealth Ct. 190, 476 A.2d 1383 (1984).

The requirements to sustain an action in mandamus are clear. It is an extraordinary remedy designed to compel public officials to perform a ministerial act or mandatory duty where there exists a clear right in the plaintiff, a corresponding duty in the defendant, and a lack of another adequate remedy at law. *Delaware River Port Authority v. Thornburgh,* 508 Pa. 11, 493 A.2d 1351 (1985).

It is clear that in the case now before us, the complaint in mandamus to compel the Commonwealth parties to disburse funds necessary for the operation of the Philadelphia County Common Pleas Court system must be analyzed in light of what our Supreme Court said in *County of Allegheny* for that is the gravamen of plaintiffs' case.

This Court need look no further than the Supreme Court's directive staying the force of its order to conclude that the plaintiffs have not met the requirements of mandamus. One simply cannot have a clear right to something when the language relied upon to support that right does not compel performance *in praesenti*. By the same token, one cannot have a corresponding duty to perform until there is a clear indication that the obligation to perform is a present one. While the courts may, and often do, indicate that something must be done by a certain date, that is not the case here, as we have previously noted.

Plaintiffs complain that the implementation of the Supreme Court's order cannot be delayed indefinitely, and we agree. In the absence of a specific date, we presume that the Supreme Court intended a reasonable time. What is a reasonable time is a matter of law and depends upon the attending circumstances. Here, the Court's order was entered barely seven months before suit was commenced. The delay here has not been unreasonable in light of the complex nature of the problem.

We also observe that in order for us to compel the defendants to do anything, we would be compelled to lift a stay imposed by our Supreme Court. We have serious doubt that we have the authority to take such action. The Supreme Court, and that Court alone, has the authority to remove the stay when, in its judgment, sufficient time has elapsed for the implementation of its order.

We hold that plaintiffs' complaints fail to state a cause of action in mandamus.

## STANDING

The Supreme Court declared in *County of Allegheny* that the integrity of our constitutionally-mandated unified judicial system must not be demeaned by the frictions inherent in the political process. Admonishing that the judiciary's obligation to exhibit neutrality and to exemplify fairness must be steadfastly fulfilled, our Supreme Court noted that the fragmented funding scheme by which our judiciary has been financed is antithetical to the concept of a unified judicial system. The Court observed that "[county] funding is inimical to a 'unified judicial system,' and indeed, is fraught with dissention and conflict. . . ." *Id.* at 73, 534 A.2d at 763.

We are presently confronted by a situation itself inimical to a "unified judicial system." The courts and related offices of one judicial district, while seeking to satisfy their own funding needs, have set upon a course contrary to the essence of our judicial system; namely, the unity which our Supreme Court sought to preserve by their decision that the statutory scheme for judicial funding by counties was unconstitutional.

As our Supreme Court remarked in *County of Allegheny,* we too find it "inconceivable that unity, in any meaningful sense of that word, can be attributed to a

court system characterized by management and fiscal disagreements. . . ." *Id.* at 74, 534 A.2d at 764.

We note that in the statutorily-conceived framework for a judicial system, unity is achieved by reposing governance of the system in our Supreme Court. 42 Pa. C. S. §§1701, 1723. Furthermore, only the Supreme Court may delegate its powers, 42 Pa. C. S. §1721, and it is clear that the Court has singularly accorded funding responsibilities to their administrative arm, the Administrative Office of Pennsylvania Courts.

It has been represented to us at oral argument that the Administrative Office has presented to the General Assembly a preliminary analysis of what will be involved in implementing the Supreme Court's order in *County of Allegheny* and a request for funds to perform a comprehensive study. We must assume that this has been done with the imprimatur of our Supreme Court.

Our law, moreover, contemplates an orderly funding process in which appropriation requests for the judiciary statewide are compiled and presented by our Supreme Court or its designated surrogate for consideration by the coordinate branches of our government. 42 Pa. C. S. §§3501-3532. Those provisions make clear that there is to be one budget request for the funding of the judicial system. Because this budget process is inclusive of county judicial operations, neither the courts of Philadelphia, nor any other judicial district, has the right to circumvent the statutory process to obtain funds for individual needs; nor is such right conferred by any language in *County of Allegheny.*

Since it was the duty of the judicial system in Philadelphia County to comply first with the statutory provisions respecting funding from the Commonwealth, *Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577 (1949), and because the legislature has presently neither failed nor neglected to provide for the reasonably necessary re-

quirements of those courts as submitted by the Administrative Office of Pennsylvania Courts to the legislature according to the procedures set forth in the Judicial Code, no present emergency for which the Commonwealth is responsible has arisen which jeopardizes the efficient administration of justice and which necessitates plaintiffs' standing in this litigation.

It scarcely needs to be mentioned that since the courts of Philadelphia County lack standing, city officials would have no standing whatever inasmuch as there is *no* provision in the funding sections of the Judicial Code previously noted for political subdivisions to participate in the budget process for the judicial system.

For the foregoing reasons, we hold that the plaintiffs lack standing to maintain the action commenced in this Court at No. 1573 C.D. 1988.

## CONCLUSION

We hold that the preliminary objections in the nature of a demurrer and raising the question of standing must be sustained and the original action brought in this Court must be dismissed. We, therefore, need not address the remaining preliminary objections.

## ORDER

The preliminary objections in the nature of a demurrer and raising the question of standing are sustained. The above-captioned case is dismissed. Record costs to be paid by plaintiffs.