**Denise CHADWICK, Individually, and as Administratrix of the Estate of Randolph Chadwick, Jr., Appellant**

v.

**DAUPHIN COUNTY OFFICE OF the CORONER.**

Commonwealth Court of Pennsylvania.

Argued April 4, 2006.
Decided Aug. 17, 2006.

Laura C. Reyes Maloney and Roger R. Laguna, Jr., Harrisburg, for appellant.

Ronald D. Butler, Harrisburg, for appellee.

BEFORE: FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.[1]

Denise Chadwick appeals from an order of the Dauphin County Court of Common Pleas (trial court) dismissing her action against the Dauphin County Office of the Coroner. Chadwick filed an action in mandamus for the purpose of forcing the Coroner to revise his conclusion that her brother, Randolph Chadwick, Jr., died by his own hand, which was contrary to the conclusion of Chadwick's medical expert that her brother's death was accidental. Because a writ of mandamus cannot be issued to order a public official to exercise discretion in a particular way, we affirm.

Randolph Chadwick, Jr. (Decedent) died on June 27, 2001, and was found two days later in his blood-stained apartment. Because of these circumstances, the death was investigated. At the request of the Coroner, Wayne K. Ross, M.D., a forensic pathologist, conducted an autopsy. Dr. Ross also reviewed Decedent's medical records, conferred with the investigating police officers and studied the photographs of the scene of death. Medical records indicated signs of depression; the day before he died, Decedent consulted his doctor

---

1. This case was reassigned to Judge Leavitt on June 22, 2006.

for his sleeping problems.[2] A window in the apartment where Decedent was found had been smashed, leaving glass strewn throughout the apartment as well as on the ground 14 stories below. The broken glass was the source of numerous, albeit superficial, cuts to Decedent's arms. The autopsy found, in addition to the cuts, bite marks on Decedent's tongue; pulmonary edema; congestion in the lungs; and a blood cocaine level of 630 nanograms per milliliter and a blood Benzolecgonine level of 1600 nanograms per milliliter. Dr. Ross concluded that Decedent died from a loss of blood caused by self-inflicted cuts to his arms and that his death was a suicide. The Coroner agreed and so issued his report and death certificate.

Upon receipt of the Coroner's report, Chadwick, who is the administrator of her brother's estate, engaged Sanford Edberg, M.D., a pathologist, to review the autopsy report, the Coroner's report, police reports, the decedent's medical records and photographs of the scene. Dr. Edberg opined that the death was not a suicide but an accident caused by complications of smoking crack cocaine.[3] Chadwick forwarded Dr. Edberg's report to the Coroner for his review and requested the Coroner to reconsider his determination that Decedent committed suicide. Although the Coroner agreed with Dr. Edberg's opinion that the "ingestion of cocaine played a role in the judgment and death of Decedent," the Coroner declined to issue a new death certificate. R.R. 112a.

Chadwick then initiated a mandamus action, seeking to have the Coroner ordered to change the cause and manner of death from suicide to accident. The complaint alleged that the Coroner failed to fulfill his statutory duties to investigate and that he acted arbitrarily in refusing to change the death certificate to show that the death was accidental. The Coroner filed preliminary objections, asserting that Chadwick lacked standing and that her complaint failed to state a claim upon which relief could be granted. The trial court sustained the Coroner's preliminary objections.

The trial court held that Chadwick lacked standing because she did not have an interest in Decedent's reputation either in her individual capacity, as a surviving family member, or in her capacity as representative of the estate. The trial court also held that the complaint failed to allege facts to support the claim that the Coroner acted arbitrarily in refusing to revise his report. The fact that Chadwick's medical expert disagreed with the Coroner's expert did not, in the view of the trial court, render the Coroner's decision arbitrary. Consequently, the trial court dismissed Chadwick's mandamus action. Chadwick now appeals from this decision.[4]

2. Decedent was suffering stress as a result of his new job and a dispute over visitation rights with his child.

3. Dr. Edberg noted that the autopsy found the cuts on Decedent's arms were not inflicted by a knife but by shards of glass. More significantly, the cuts were superficial wounds that involved veins, not arteries. Thus, he concluded that the cuts did not cause Decedent's death. He concluded that Decedent's cocaine use caused violent hallucinations that caused him to break glass and cut himself. Death, he believed, was "from

convulsions (as evidenced by the tongue bite marks) with cardiorespiratory arrest (as evidenced by pulmonary congestion and edema). I would therefore categorize the manner of death as accidental and not suicidal." Reproduced Record at 98a (R.R. ___).

4. Our review of a trial court's order sustaining preliminary objections in the nature of a demurrer is to determine whether on the facts alleged the law states with certainty that no recovery is possible. *Hanscom v. Bitler*, 883 A.2d 1111 (Pa.Cmwlth.2005). The court must accept as true all well pled allegations, mate-

Before this Court, Chadwick raises two issues. First, she contends that the trial court erred in concluding that she lacked standing to challenge the official report on her brother's death, distinguishing her action from this Court's precedent holding that a survivor lacks such standing. Chadwick's standing, she asserts, is derived from the interest of her brother's estate. Second, she contends that because the complaint pled facts sufficient to support a claim that the Coroner acted arbitrarily, it was error for the trial court to dismiss her mandamus action. We consider these issues in reverse order.

■ We begin with a review of the principles of mandamus. The common law writ of mandamus lies to compel a public official's performance of a ministerial act or a mandatory duty. It is not available to revise a public official's decision that results from the exercise of discretion. 18 STANDARD PENNSYLVANIA PRACTICE 2D § 99:18 (2005). As a high prerogative writ, mandamus writs are rarely issued and never where the plaintiff seeks to interfere with a public official's exercise of discretion. These fundamentals have long been honored by this Court. In *Bradley v. Casey*, this Court stated that

> [t]he requirements to sustain an action in mandamus are clear. It is an extraordinary remedy designed to compel public officials to perform a ministerial act or mandatory duty....

119 Pa.Cmwlth. 180, 547 A.2d 455, 458 (1988). Similarly, in *Nader v. Hughes*, 164 Pa.Cmwlth. 434, 643 A.2d 747, 753 n. 13 (1994) (emphasis added), we observed that mandamus is appropriate to "compel the public official to perform *acts* which are required or obliged to be performed and *which do not involve an exercise of discretion* or judgment."

■ It is true that a writ of mandamus can be used to compel a public official to exercise discretion where he refuses to do so. When it first recited this maxim, our Supreme Court explained as follows:

> But *where* by a mistaken view of the law or by an arbitrary exercise of authority *there has been in fact no actual exercise of discretion, the writ will lie.*

*Tanenbaum v. D'Ascenzo*, 356 Pa. 260, 263, 51 A.2d 757, 758 (1947) (citing *Marland v. Hoffman*, 184 Okla. 591, 89 P.2d 287 (1939)) (emphasis added). In this above-quoted passage, the Supreme Court explained that a public official's refusal to act could be intentional, *i.e.*, arbitrary, or unintentional, *i.e.*, a failure to understand the law. *Tanenbaum* established that a refusal to exercise discretion may be addressed in a mandamus action. *Tanenbaum* did *not* establish that where discretion has been exercised and plaintiff believes the exercise to have been arbitrary, the discretionary act can be revised in a mandamus action.

In a subsequent restatement of *Tanenbaum*, the Supreme Court stated

> It is well settled that in a mandamus proceeding a court can compel a public official who is vested with a discretionary power to exercise that discretion; but (unless the discretion is arbitrarily or fraudulently exercised or is based upon a mistaken view of the law) it cannot interfere with or control the official's discretion or judgment. Expressed another way, it is the discretion and judgment of the official (who is vested with a discretionary power) which

rial facts averred and inferences deducible therefrom; however, the court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allega-

tions or expressions of opinion. *Penn Title Insurance Company v. Deshler*, 661 A.2d 481 (Pa.Cmwlth.1995), *appeal denied*, 543 Pa. 699, 670 A.2d 145 (1995).

prevails and not that of a court or a jury or a person aggrieved; and a *Court cannot compel such official to exercise his discretion in a manner which will produce a result which the Court may deem wise or desirable.*

*Maxwell v. Farell School District Board of Directors,* 381 Pa. 561, 566, 112 A.2d 192, 195 (1955) (emphasis added). Taken out of context, the parenthetical phrase in the first sentence of the above-quoted passage can be read to mean that an arbitrary exercise of discretion is open to court interference. However, this is not correct. First, *Maxwell* relies upon *Tanenbaum*, which holds that the exercise of discretion can be compelled if arbitrarily refused; it says nothing about correcting the arbitrary exercise of discretion. Second, the remainder of the quote clarifies that discretion belongs to public officials, not to courts and not to plaintiffs. At best, the parenthetical phrase is an aside; it does not support the principle that an official's arbitrary exercise of discretion can be corrected in a writ of mandamus. One will search in vain for such a holding in this or in any jurisdiction.[5]

■ In sum, *Maxwell* and *Tanenbaum* stand for the principle that a public official may not refuse to exercise discretion by taking the position that exercising discretion is, itself, discretionary. In no way do *Maxwell* and *Tanenbaum* retreat from the fundamental principle that mandamus is not used to force an official to exercise his discretion toward a result that a plaintiff may believe wise or desirable. Indeed, our Supreme Court has long enjoined that "[w]here the [public official] is clothed with discretionary powers, and has exercised those powers, mandamus will not lie to compel a revision of the decision resulting from such exercise of discretion, though in fact, the decision may be wrong." *Anderson v. Philadelphia,* 348 Pa. 583, 587, 36 A.2d 442, 444 (1944).[6]

5. The concurring opinion attempts to do so. However, the cases cited therein, particularly those involving prisoners, do not stand for the proposition that a public official's exercise of discretion, even if arbitrary, is reviewable in mandamus. There is nothing discretionary in the mathematical computation of a prison sentence. Accurate computation of a prison sentence is itself a mandatory duty of the Department of Corrections. Therefore, a failure (or refusal) to compute a sentence in accordance with statute is properly addressed in mandamus. *Brown v. Department of Corrections,* 686 A.2d 919, 921 (Pa.Cmwlth.1996). Likewise, a county board of assessment appeals has a statutory duty to value occupations for tax purposes in accordance with The Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. §§ 5453.101–5453.706. It has no discretion to do otherwise. Mandamus is, therefore, an appropriate mechanism for compelling the board to discharge a duty mandated by statute. *Bald Eagle Area School District v. County of Centre, Board of Assessment Appeals,* 745 A.2d 689 (Pa.Cmwlth. 1999). Absent from the concurring opinion is any authority for challenging a truly discretionary act by a public official through a mandamus action. It is for the legislature, not the courts, to fashion a mechanism for lodging such a challenge.

6. Mandamus is so rare that even where the plaintiff can establish the grounds for mandamus, its issuance is not automatic. It has been held that where a plaintiff seeks to compel a ministerial act and the act is mandatory, "its issuance is not a matter of right but in certain circumstances is a matter for the sound discretion of the court." *Travis v. Teter,* 370 Pa. 326, 330, 87 A.2d 177, 179 (1952). Accordingly, a writ of mandamus has been refused where its issuance would be inequitable or would cause "disorder and confusion in municipal or governmental departments." *Waters v. Samuel,* 367 Pa. 618, 622, 80 A.2d 848, 849 (1951) (refusing a request for a writ to have police records revised to correct the birth date of a patrolman who had lied about his age to gain employment because of the confusion and disorder that would be caused by undertaking extensive record changes).

■ In her complaint, Chadwick asserts that Section 1237 of The County Code, Act of August 9, 1955, P.L. 323, *as amended,* mandated the Coroner to "investigate the facts and circumstances concerning deaths . . . for the purpose of determining whether or not an autopsy should be conducted or an inquest [held]." 16 P.S. § 1237.[7] She complains that the Coroner's mandatory investigation was not adequate because it disregarded Dr. Edberg's report and did not explain the Coroner's reasons for doing so. Amended Petition for Review and Change of Coroner's Determination of Death of Randolph Chadwick, Jr. ¶ 35–36, R.R. 89a. These allegations do not state a cause of action.

Section 1237(a) of the County Code requires an investigation for the purpose of determining whether to order an autopsy or an inquest. Because the Coroner ordered an autopsy, the investigation required under Section 1237(a) has been done. The other purpose of the Coroner's investigation is to determine the cause of death and whether "such death may have resulted from criminal acts . . . of persons

other than the deceased." 16 P.S. § 1237(b) (emphasis added). Decedent's use of crack cocaine was unlawful; even if it caused Decedent's death, it is of no moment under Section 1237(b) because Decedent is the one who did the criminal act. Assuming, however, that Section 1237(b) created a duty in the Coroner to determine Decedent's cause of death, even where it will not lead to a criminal prosecution, it does not advance Chadwick's cause. The Coroner has determined the cause of death, and he has exercised his discretion to accept the report of Dr. Ross over that of Dr. Edberg. In short, the complaint itself shows that the Coroner has fulfilled his statutory duty to investigate the cause of Decedent's death.

The County Code has "clothed [the coroner] with discretionary powers" to decide the extent of an investigation and to decide the cause of death. *Anderson,* 348 Pa. at 587, 36 A.2d at 444. The County Code does not require a coroner to convince members of the public, including family members, of the accuracy of his findings.[8]

---

7. It states:

(a) The coroner having a view of the body *shall investigate the facts and circumstances concerning deaths* which appear to have happened within the county, regardless where the cause thereof may have occurred, for the purpose of determining whether or not an autopsy should be conducted or an inquest thereof should be had, in the following cases:

\* \* \*

(3) deaths occurring as a result of violence or trauma, whether apparently homicidal, suicidal or accidental (including, but not limited to, those due to mechanical, thermal, chemical, electrical or radiational injury, drowning, cave-ins and subsidences);

(4) any death in which trauma, chemical injury, drug overdose or reaction to drugs or medication or medical treatment was a primary or secondary, direct or indirect,

contributory, aggravating or precipitating cause of death;

\* \* \*

(b) The purpose of the investigation shall be to determine the cause of any such death and to determine whether or not there is sufficient reason for the coroner to believe that any such death may have resulted from criminal acts or criminal neglect of persons other than the deceased.

16 P.S. § 1237 (emphasis added). Section 1238 provides, in relevant part, "[i]f, upon investigation, the coroner shall be unable to determine the cause and manner of death, he shall perform or order an autopsy on the body." 16 P.S. § 1238.

8. The County Code does not create a private right of action in persons who believe the coroner has not done an adequate investigation. Likewise, it establishes no recourse to those who believe that the content of a death certificate is incorrect, whether issued by a coroner or by the Bureau of Vital Statistics.

They are free to regard Dr. Edberg's conclusion to be the accurate one and to consider the official death certificate to be flawed. However, because the Coroner has exercised his discretionary powers, "mandamus will not lie to compel a revision of the decision resulting from such exercise of discretion, though in fact, the [Coroner's] decision may be wrong." *Anderson*, 348 Pa. at 587, 36 A.2d at 444.

Chadwick's request for a writ of mandamus was inappropriate because she sought to compel the exercise of the Coroner's discretion in a particular way. The Coroner may have been wrong in his judgment that Decedent committed suicide, but that judgment cannot be revisited by a court sitting in mandamus.[9]

We affirm the trial court.

## ORDER

AND NOW, this 17th day of August, 2006, the decision of the Court of Common Pleas of Dauphin County, dated February 23, 2005, in the above-captioned matter, is hereby AFFIRMED.

---

> Section 1244 of The County Code provides that
>
> > [t]he coroner shall issue a certificate of death in all cases referred to him by the local registrar of vital statistics, ... and in all other cases of which he has jurisdiction, if no person duly authorized by the [Vital Statistics Law of 1953] certifies the cause of death.
>
> 16 P.S. § 1244. We are bound by the statute as written and will not create remedies by misusing the common law writ of mandamus.

9. We need not reach the issue of Chadwick's standing. As an aside, situations can be posited where the estate of a decedent might have standing to challenge a death certificate that incorrectly recited the cause of death to be suicide as opposed to an accident. For example, life insurance coverage may turn on whether the policyholder's death was caused by accident or by self destruction. 9A COUCH ON INSURANCE 3D, §§ 138:50–138:71. An offi-

## CONCURRING OPINION BY Judge FRIEDMAN.

Like the majority, I would affirm the order of the Dauphin County Court of Common Pleas (trial court) sustaining the Dauphin County Office of the Coroner's (the Coroner) preliminary objections and dismissing Denise Chadwick's (Chadwick) action in mandamus; therefore, I concur in the result reached by the majority. However, I write separately to express my concern with the majority's conclusion that mandamus will *never* lie where an exercise of discretion is involved.

The majority states that "[a]s a high prerogative writ, mandamus writs are rarely issued and *never where the plaintiff seeks to interfere with a public official's exercise of discretion.*" (Majority op. at 603) (emphasis added). Thus, the majority concludes that mandamus will not lie here because "The County Code[1] has 'clothed [the Coroner] with discretionary powers' to decide the extent of an investigation and to decide the cause of death." (Majority op. at 605) (quoting *Anderson v. City of*

---

cial death certificate would have evidentiary value in a claim dispute. However, Chadwick bases her claim of standing upon the assertion that Decedent, as opposed to his family, believed suicide was against "the law of God, is shameful, sinful, and cowardly ..." and has an interest in preventing the "stigma" caused by a ruling that his death was a suicide. Amended Petition for Review and Change of Coroner's Determination of Death of Randolph Chadwick, Jr. ¶ 34, R.R. 89a.

In any case, the issue of standing is separate from the issue of whether any person, survivor or decedent, can challenge the content of a death certificate. For the reasons explained in this opinion, we hold that there is no cause of action in mandamus to force a Coroner to change the content of a death certificate.

1. Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§ 101–3000.

*Philadelphia,* 348 Pa. 583, 587, 36 A.2d 442, 444 (1944)). In support of its conclusion, the majority cites cases standing for the proposition that one cannot challenge a public official's discretionary act through an action in mandamus and that once the discretion is exercised, no individual has the ability, and no court has the authority, to compel the public official to exercise that discretion in a particular way.[2] While I agree that, generally, the court may not control the manner in which discretion is exercised and may not interfere with an official's judgment, I cannot agree with the majority's suggestion that this is a *per se* rule that allows for no exceptions. In fact, in one of the cases cited by the majority, we acknowledged that "we will review a public official's discretion where its exercise is arbitrary or fraudulent or is based upon a mistaken view of the law." *Nader v. Hughes,* 164 Pa.Cmwlth. 434, 643 A.2d 747, 753 (1994).

There are certain situations where, as here, a public official is required to exercise discretion in order to perform a statutorily mandated duty.[3] In these situations, the arbitrary or improper exercise of an official's discretion may prevent the public official from *properly* performing his or her mandatory duties in accordance with the law, and an individual may utilize a writ of mandamus to challenge such action. Although the majority asserts that one would "search in vain for such a holding,"

(majority op. at 604), I cannot agree. The case law contains many such examples. *See,* e.g., *Commonwealth ex rel. Davis v. Pennsylvania Board of Parole,* 484 Pa. 157, 398 A.2d 992 (1979) (holding that a proceeding in mandamus is available to compel a public official to correct a mistake in applying the law when interpreting commitment papers); *Brown v. Department of Corrections,* 686 A.2d 919 (Pa. Cmwlth.1996) (holding that a writ of mandamus can be used to compel an official to compute a prisoner's prison sentence *properly,* but may not be used to compel an illegal act); *Bald Eagle Area School District v. County of Centre, Board of Assessment Appeals,* 745 A.2d 689 (Pa.Cmwlth. 1999) (holding that the Board's arbitrary exercise of discretion resulted in its failure to perform its statutorily mandated duty), *appeal denied,* 568 Pa. 620, 792 A.2d 1254 (2000). Admittedly, Chadwick's mandamus action differs from these cases, but that does not excuse the majority's failure to acknowledge their existence.

Therefore, while I agree that Chadwick cannot prevail here, I cannot accept and adopt the majority's *per se* rule.

---

2. *Maxwell v. Board of School Directors of the District of Farrell,* 381 Pa. 561, 112 A.2d 192 (1955); *Tanenbaum v. D'Ascenzo,* 356 Pa. 260, 51 A.2d 757 (1947); *Nader v. Hughes,* 164 Pa.Cmwlth. 434, 643 A.2d 747 (1994); *Bradley v. Casey,* 119 Pa.Cmwlth. 180, 547 A.2d 455 (1988).

3. Pursuant to sections 1237 and 1238 of The County Code, a coroner has the mandatory duty to: (1) investigate the facts and circumstances of certain deaths; (2) if unable to determine the cause and manner of death based on the investigation, perform or order an autopsy to be performed to determine the cause and manner of death; and (3) based on the investigation and autopsy, determine cause and manner of the death. 16 P.S. §§ 1237, 1238. In performing the mandatory duty of determining the cause and manner of death, a coroner *exercises his discretion* to come to the *factual conclusion* as to what the *actual* cause and manner of death is.