# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jill E. Mancini                     :

                                  :

        v.                   :    No. 1045 C.D. 2019

                                    :    Argued: December 8, 2020

Northampton County Personnel    :

Appeals Board,                  :

               Appellant    :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE P. KEVIN BROBSON, Judge[1]
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON            FILED:  January 27, 2021

Appellant Northampton County Personnel Appeals Board (Board) appeals from an order of the Court of Common Pleas of Northampton County (trial court), dated July 3, 2019. The trial court granted the petition for civil contempt (Petition) filed by Appellee Jill E. Mancini (Mancini) and found the Board to be in contempt of the trial court's March 25, 2019 order. For the reasons set forth below, we reverse the trial court's order.

The parties stipulated to the underlying background facts of this case during the proceedings before the trial court. Mancini began working for Northampton County (County) as a full-time assistant solicitor in February 2007. (Reproduced Record (R.R.) at 63a.) In January 2014, Mancini learned that her

---

[1] This case was assigned to the opinion writer prior to January 4, 2021, when Judge Brobson became President Judge.

position had been eliminated and that her employment with the County would be terminated effective February 17, 2014. (*Id.*) In response thereto, Mancini filed a grievance with the County, alleging, *inter alia*, that she was a career service employee,[2] who had been wrongfully discharged without just cause and discriminated against due to her political party affiliation. (*Id.* at 63a, 108a-10a.) Following an informal hearing, the County denied Mancini's grievance. (*Id.* at 63a-64a, 115a-16a.)

Mancini appealed the County's denial to the Board.[3] (*Id.* at 64a, 112a-13a.) The Board held hearings on May 13, 2014, and June 4, 2014. (*Id.* at 64a.) Thereafter, by letter dated August 19, 2014, the Board's then solicitor, Christian M. Perrucci, Esquire (Solicitor Perrucci), notified the parties' counsel that the Board had reached a deadlock; two members of the Board had voted in favor of the County and two members of the Board had voted in favor of Mancini. (*Id.* at 64a, 123a.) By letter dated November 19, 2014, Solicitor Perrucci confirmed to Mancini's counsel that, "after an extensive review of the transcripts and exhibits, the Board is

---

[2] The County's elected officials, officers, and employees are members of either the career service or the exempt service. (Supplemental Reproduced Record (S.R.R.) at 38b-39b; Section 802 of the County's Home Rule Charter.) Career service employees have certain rights relative to their employment with the County as established by the County's Career Service Regulations and Employee Policies Manual. One of those rights relates to disciplinary action and termination of employment: "Any disciplinary action, suspension, demotion, or termination of employment . . . of any employee in the [c]areer [s]ervice for disciplinary reasons or unsatisfactory job performance, shall be for just cause only . . . ." (R.R. at 103a; County's Career Service Regulation No. 13.01.)

[3] The Board was established under Article X of the County's Home Rule Charter. (S.R.R. at 52b.) The Board's function is to hear grievance appeals by, among others, "any member of the career service from any decision resulting in . . . transfer, demotion, suspension, dismissal, or disciplinary action . . . ." (*Id.* at 55b; Section 1005(a)(1) of the County's Home Rule Charter.) In connection therewith, the Board has the "power to sustain or dismiss [the] appeal, to modify a penalty, to award back pay, and to reinstate an employee." (*Id.* at 56b; Section 1005(b) of the County's Home Rule Charter.)

hopelessly deadlocked in its decision." (*Id.* at 64a, 118a.) In that same letter, Solicitor Perrucci invited Mancini's counsel to offer "suggestions on how . . . Mancini's matter should be handled." (*Id.*)

Almost two years later, on October 19, 2016, after the conclusion of a federal lawsuit that Mancini had filed against the County, the County's county executive, and the County's solicitor, Mancini emailed a letter to the Board's new solicitor, Juan P. Camacho, Esquire (Solicitor Camacho), requesting that the Board issue a final adjudication in connection with her grievance appeal. (*Id.* at 64a, 120a-21a.) In that letter, Mancini suggested that the substantive legal issues underlying her appeal had already been decided by the United States Court of Appeals for the Third Circuit and were, therefore, binding upon the Board. (*Id.* at 120a-21a.) By email dated November 16, 2016, Solicitor Camacho advised Mancini that he was "not taking any action on [her] request[]" because "there [was] no live controversy before the [Board], as [her] case [was] more than [two] years [old] and [her] damages were squarely addressed by the [f]ederal [c]ourt." (*Id.* at 64a, 125a-26a.)

Subsequent thereto, on November 23, 2016, Mancini, who at the time was acting *pro se*, filed a mandamus action with the trial court against the Board (Mandamus Action). (*Id.* at 4a.) In the Mandamus Action, Mancini alleged that the Board had a "mandatory duty to render written findings and a decision regarding [her] grievance appeal" pursuant to Career Service Regulation No. 15.02[4] and Employee Policy No. 3.15,[5] which the Board did not do. (*Id.* at 14a.)

---

[4] Career Service Regulation No. 15.02 provides, in relevant part: "The findings and decision of the Board shall be in writing and shall be certified to the Department of Human Resources." (R.R. at 106a.)

[5] Employee Policy No. 3.15 provides, in relevant part: "A final adjudication shall be in writing containing findings and reasons as adopted by the majority of the Board. The Solicitor of **(Footnote continued on next page…)**

3

Mancini requested that the trial court enter an order directing the Board to: (1) perform its mandatory duty to issue a written decision and findings in connection with her grievance appeal; (2) provide copies of the written decision to Mancini and the County; (3) certify the written decision to the County's human resources department; and (4) provide timely notice to Mancini and the County of their right to appeal. (*Id.* at 15a.)

Thereafter, on March 25, 2019, after review of the parties' briefs and the stipulated facts and record, the trial court entered an order finding in favor of Mancini and directing the Board to "render a written decision regarding [Mancini's] appeal; provide copies of its decision to [Mancini] and the County . . . ; certify its decision to the . . . County['s] Department of Human Resources; and provide timely notice to [Mancini] and to the County . . . of their respective rights of appeal from its decision and findings" (Mandamus Order). (*Id.* at 188a.) In so doing, the trial court reasoned, in relevant part:

> [T]he Board asserts that [Mancini] is inappropriately trying to compel the Board to break the deadlock it reached in 2014 on [Mancini's] appeal. We note that there does not appear to be a dispute among the parties as to [Mancini's] right to appeal her termination to the Board, thereby satisfying the first element [required for mandamus relief]. With regard to the second element, the Board's duty to perform, the parties disagree on the effect of the regulations and policies governing the appeal[—Career Service Regulation 15.02 and Employee Policy No. 3.15].
>
> [Mancini] argues that the Board failed to perform its duty in accordance with the above-cited regulations in that the Board never issued a final, written decision on her appeal. In response, the Board asserts that it discharged its duty by notifying [Mancini] that it was deadlocked. We note that in ruling on [p]reliminary [o]bjections in the instant matter, the Honorable Stephen Baratta [Judge Baratta] stated:

the . . . Board shall sign such final adjudication and copies shall be provided to the parties." (R.R. at 148a.)

4

> Assuming that the Board notified [Mancini] in writing that it was "hopelessly deadlocked," this notice would be insufficient for the Board to meet its duty to render a final decision on [Mancini's] appeal. Indeed, . . . Career Service Regulation [No.] 15.02 explicitly requires the Board to issue a final adjudication in writing containing findings and reasons. The Board is under a duty to evaluate whether [Mancini] has met her burden in sustaining the appeal. If not, the Board is required to issue a final decision, so that there is finality as to the disposition of [Mancini's] appeal in order for [Mancini] to pursue other avenues of relief.

[Judge Baratta] further noted that the Board admitted that it never certified its decision to the [County's] Department of Human Resources, also as required by [Career Service Regulation No.] 15.02. [This trial court] agree[s]. The above-cited regulations are not ambiguous and create a clear duty for the Board to issue a written decision, certified to the [County's] Department of Human Resources. The communication from [Solicitor Perrucci], first stating that he was going to "research the matter and meet with the Board['s m]embers again to see if we can possibly break the deadlock" and followed by further communication in which he requests "suggestions on how . . . Mancini's matter should be handled" clearly do not satisfy the Board's duty. The Board's arguments that it could not fulfill its duty because there was no majority, or that the Board cannot be compelled to break a deadlock, both misconstrue [Mancini's] position and are without merit. The Board has cited to no persuasive legal authority to support its conclusion that the purported deadlock, and the manner in which it was communicated to [Mancini], discharged its duty. The Board cites to *Lamar Advantage GP [Company] v. Zoning Hearing Board of Adjustment*, 997 A.2d 423 (Pa. Cmwlth. 2010)[,] for the proposition that a tie vote necessitates the maintaining of the status quo— [Mancini's] termination in this case. However, [the Board] ignores the procedural history of *Lamar* and all the cases cited therein, where the respective [b]oards, despite arriving at split decisions, all issued formal opinions supported by findings of fact and conclusions of law setting forth the grounds for denial. Unlike [those] cases, even if the final outcome of [Mancini's] hearings before the Board was a deadlock, the Board ultimately failed to put that outcome in writing with any finality, failed to provide findings and reasons in support thereof, and failed to certify that result to the [County's] Department of Human Resources. Consequently, it is apparent that the Board had a duty to perform,

5

satisfying the second element necessary to sustain [Mancini's] [M]andamus [A]ction.

Turning to the final necessary element [for mandamus relief], [Mancini] argues that no other remedy exists. [This trial court] agree[s]. The Board argues that [Mancini] could have and should have appealed following the November 2014 correspondence from [Solicitor Perrucci], in which it was indicated that the Board was "hopelessly deadlocked" and requesting suggestions to take back to the Board. The Board characterizes this correspondence as sufficient notice of its final action in the matter. However, as discussed above, this communication is clearly insufficient to be considered a final adjudication of [Mancini's] appeal. Further, any appeal by [Mancini] would require a [c]ourt to review the adjudication of the Board. Here, as there was no adjudication, the [c]ourt would be compelled to remand, which is the same remedy [Mancini] is currently seeking.

Based on the foregoing, [Mancini] has satisfied all the necessary elements of a mandamus action, and established her right to her requested relief . . . .

(*Id.* at 181a-84a (footnote omitted) (citations omitted).)

In response to the Mandamus Order, the Board held a meeting on May 8, 2019, at which time the Board heard argument from Mancini and the County. (*Id.* at 243a-80a.) After recessing for a brief executive session to discuss Mancini's appeal, the Board's five members unanimously voted to

deny the appeal and authorize the [Board's] solicitor to prepare an[d] issue [a] written decision affirming the prior [B]oard[ members'] deadlock as a denial and provide copies of its decision to [Mancini] and the County . . . , certify its decision to the . . . County['s] Department of Human Resources[,] and provide timely notice to [Mancini] and to the County . . . of their respective rights of appeal from its decision and findings.

(*Id.* at 281a.)

Thereafter, on May 24, 2019, Mancini filed her Petition, alleging, *inter alia*, that the action taken by the Board at its May 8, 2019 meeting "constituted an utter and complete dereliction of its duty in direct violation" and in contempt of the Mandamus Order, which "has rendered [Mancini's] right of appeal meaningless and

6

can only result in a further remand to the Board to perform its mandatory duty." (*Id.* at 214a.) The trial court issued a rule to show cause, directed the Board to file an answer to the Petition within twenty days, and scheduled a hearing on the Petition for June 24, 2019. (*Id.* at 211a.) In the meantime, on June 17, 2019, the Board issued a written decision denying Mancini's appeal. (*Id.* at 191a-209a.) In so doing, the Board issued factual findings limited to Mancini's termination from her employment with the County, Mancini's appeal to the Board, the prior Board members' deadlock, the Mandamus Action, and the Board's May 8, 2019 meeting. (*Id.* at 193a-96a.) The Board reasoned:

> [T]he 2019 Board [m]embers reach a [five] to [zero] unanimous decision in favor of the County and denying the appeal of [Mancini]. The 2014 Board [m]embers, who heard all testimony and evidence as the fact-finder[s] were best situated to make credibility determinations and render a decision in the [a]ppeal. The record is clear that the 2014 Board [m]embers were hopelessly deadlocked. . . .
>
> Accordingly, the 2019 Board [m]embers unanimously find that [Mancini] failed to satisfy her burden of proof in the [a]ppeal by convincing a majority of the 2014 Board [m]embers to vote in her favor. The 2019 Board [m]embers further find that the deadlocked or tie vote of the 2014 Board [m]embers constituted a denial of the [a]ppeal. Therefore, [Mancini's] appeal is denied.

(*Id.* at 196a-97a (citations omitted).)

The trial court heard argument on the Petition on June 24, 2019. (*Id.* at 313a.) At that time, the parties introduced certain documentary evidence as exhibits, but did not present any witness testimony. (*Id.* at 313a-54a.) By order dated July 3, 2019, the trial court granted Mancini's Petition, found the Board to be in contempt of the Mandamus Order, and directed the Board to pay Mancini's counsel fees incurred in connection with the Petition (Contempt Order). In support thereof, the trial court issued a statement of reasons as follows:

7

2. The Board issued a written decision on June 17, 2019, following a vote on May 8, 2019. The written decision fails to comply with the [Mandamus Order] because it in no way addresses the merits of [Mancini's] original appeal. There is no reference to the content of the 2014 hearings, and the decision contains no factual findings or conclusions based upon the testimony presented in 2014. The decision provides no rationale for how the 2014 Board [members] arrived at [their] deadlock, which is now being relied upon by the current Board [members] as [the] basis for [the Board's] denial.

3. [This trial court] also note[s] that the statement in the 2019 [d]ecision that "the record is clear that the 2014 Board members were hopelessly deadlocked" is not supported by the record, because as [this trial court] repeatedly stated in the [opinion accompanying the Mandamus Order], the 2014 Board [members] never issued a formal, final decision [of the Board], and therefore there is no actual statement of record by the Board members setting forth the basis for any decision, deadlocked or not.

4. Moreover, the [Board's] instant decision again relies on zoning case law to argue that a tie vote constitutes a denial of the requested relief, which [this trial court] rejected as a valid basis for the Board's actions, because, as noted, the Board has never set forth the facts and conclusions underlying its deadlocked vote. . . .

5. The clear direction of the [Mandamus Order] was that the Board had to issue a written decision setting forth the grounds and rationale for its 2014 denial and addressing the merits of [Mancini's] original appeal. This was also the clear import of the previous [o]pinion issued by [Judge] Baratta in ruling on [p]reliminary [o]bjections . . . .

6. The Board has thus far failed to make any evaluation of whether [Mancini] met her burden based on the testimony presented in 2014, or to address any of the questions raised in [Mancini's] original appeal to the Board. The current written decision contains only procedural history. The Board has still failed to include any findings or conclusions addressing the underlying merits of the appeal, and presents no reasoning supporting its decision. The lack of rationale appears to be an attempt to preclude any meaningful review on appeal, which would require a reviewing court to determine whether the Board's decision is supported by the record, which is difficult where there is no reference to the record and no discussion of the merits of [Mancini's] appeal. To date, the Board has not rendered a decision on the issues raised by [Mancini's] 2014 appeal to the Board, namely: whether she was a career service employee; whether she was

discharged from her position without just cause; whether she was provided with adequate opportunity to be heard prior to her discharge; and whether she was offered alternative employment with the County.

      7.    The Board was clearly directed to issue a written decision setting forth its findings and the reasons supporting its decision. The [Board's] instant decision's reference to and reliance solely on the Board's previous "deadlock" fails to address in any way the above-stated issues that were raised by [Mancini] before the Board. Consequently, the Board is in contempt of this [trial c]ourt's [Mandamus Order] and [Mancini] is entitled to counsel fees for the presentation of the Petition . . . .

      8.    Furthermore, in the event that [Mancini] pursues an appeal of the Board's decision, the Board shall be bound by its June 17, 2019 decision and its adjudication on the merits of [Mancini's] appeal and the reviewing [c]ourt can determine whether the Board's adjudication is supported by substantial evidence . . . .

(*Id.* at 357a-60a.)

On appeal to this Court,[6] the Board argues: (1) the trial court abused its discretion by issuing the Contempt Order; (2) the trial court erred by failing to follow the proper procedure before finding the Board to be in contempt of the Mandamus Order—*i.e.*, the trial court failed to satisfy certain essential due process requirements; and (3) even assuming, *arguendo*, that the trial court did not abuse its discretion in issuing the Contempt Order, there is no evidence of record to support the trial court's imposition of sanctions against the Board—*i.e.*, the trial court did not make any finding that either the Board acted in bad faith or in willful disregard of the Mandamus Order or that the imposed sanctions would deter the Board from acting in the same manner in the future.[7]

---

    [6] "Our scope of review when considering an appeal from a contempt order is limited to a review of whether the trial court abused its discretion or committed an error of law." *Lower Mount Bethel Twp. v. Stine*, 686 A.2d 426, 429 (Pa. Cmwlth. 1996).

    [7] We have reordered and condensed the Board's arguments for the purposes of our discussion/analysis.

9

First, we will address the Board's argument that the trial court abused its discretion by issuing the Contempt Order. More specifically, the Board contends that there was no basis upon which the trial court could have found the Board to be in contempt of the Mandamus Order because the Board complied with the Mandamus Order's clear and specific language by: (1) issuing a written decision in connection with Mancini's grievance appeal; (2) providing copies of its written decision to Mancini and the County; (3) certifying its written decision to the County's Department of Human Resources; and (4) providing notice to Mancini and the County of their right to appeal its written decision. The Board suggests that, in issuing the Contempt Order, the trial court improperly relied upon alleged requirements that were outside the clear and specific language of the Mandamus Order without first finding that the Mandamus Order was vague and ambiguous. The Board further contends that, even if the trial court found ambiguities or omissions within the Mandamus Order—*i.e.*, the Mandamus Order omitted certain intended directives or the term "written decision" was ambiguous—the trial court should have construed any such ambiguities or omissions in the Board's favor, which it did not do. The Board also contends that the bases upon which the trial court relied in issuing the Contempt Order—*i.e.*, the content of the Board's decision/the Board's discretionary duties—were beyond the trial court's jurisdiction in the Mandamus Action and, therefore, could not have been requirements of the Mandamus Order. Lastly, the Board argues that the record does not contain any evidence that the Board acted with wrongful intent or in willful violation of the Mandamus Order, which is an essential element for a finding of contempt.

In response, Mancini argues that the trial court did not abuse its discretion by issuing the Contempt Order because the Board acted in willful defiance of the clear,

specific, and plain language of the Mandamus Order. In that regard, Mancini suggests that the Board's affirmation of the deadlock between its prior members did not constitute a final action by the Board and, even if it did, the Board's purported decision is woefully inadequate and legally insufficient because it did not contain the necessary and required findings of fact and conclusions of law. Mancini further argues that the trial court did not fail to construe any ambiguity in the Mandamus Order in the Board's favor, because the Mandamus Order did not contain any such ambiguity given that the trial court's accompanying opinion "specifically stated what was necessary to legally satisfy the contents of a written decision." (Mancini's Br. at 17.) Mancini suggests that the Board knew or should have known since at least the date on which Judge Baratta issued his decision on preliminary objections that the Board's notice of deadlock failed to meet the requirements of a final adjudication. Mancini also contends that, in the Mandamus Order, the trial court did not provide any specific direction to the Board on how it should exercise its discretionary duties; rather, the trial court simply "inform[ed] the Board as to the nature and extent of its obligations" to issue a written decision. (*Id.* at 19.) Lastly, Mancini argues that the Board's conduct "at its May 8, 2019 meeting in and of itself is sufficient evidence of willful noncompliance and bad faith." (*Id.*)

In its reply brief, the Board contends that Mancini does not dispute that the Board complied with each of the four directives specifically included in the Mandamus Order but, rather, attempts to attack the substance of the Board's decision, which, according to the Board, was not at issue in the Mandamus Action. The Board suggests that Mancini's brief, as well as the Contempt Order, focus "entirely on matters outside of the Mandamus Order." (Board's Reply Br. at 4.) The Board further suggests that, to the extent that Judge Baratta discussed the

11

insufficiency of the Board's notice of deadlock as a final adjudication in his decision on preliminary objections, such discussion is irrelevant to any consideration of the Board's contempt because the discussion itself was dictum and was not incorporated or referenced in the Mandamus Order. The Board also argues that, contrary to Mancini's contentions, the opinion accompanying the Mandamus Order "did not expressly require the Board to consider specific pieces of evidence or explain, in detail, why the [Board's prior members] were deadlocked." (*Id.* at 9.) Rather, it "merely required the Board to issue a written, final decision supported by 'findings and reasons,'" which the Board suggests is exactly what it did. (*Id.*) The Board further suggests that any challenge to the content of the Board's decision is appropriate, not in connection with this Mandamus Action, but rather in an appeal of the Board's decision. Finally, the Board argues that, even assuming *arguendo*, the Board violated the Mandamus Order, Mancini failed to meet her burden of proving that the Board did so with wrongful intent.

"Courts have inherent power to enforce their orders through the power of contempt." *Waggle v. Woodland Hills Ass'n, Inc.*, 213 A.3d 397, 403 (Pa. Cmwlth. 2019). "The purpose of civil contempt is to compel performance of lawful orders[] and[,] in some instances, to compensate the complain[ing party] for the loss sustained." *Cecil Twp. v. Klements*, 821 A.2d 670, 675 (Pa. Cmwlth. 2003). In a civil contempt proceeding, the complaining party bears the burden of proving noncompliance with the court order by a preponderance of the evidence. *Joos v. Bd. of Supervisors of Charlestown Twp.*, 237 A.3d 624, 634 (Pa. Cmwlth. 2020). "Mere noncompliance with a court order[, however,] is insufficient to prove civil contempt." *Id.* The complaining party must also prove: "(1) that the contemnor had notice of the specific order or decree which [it] is alleged to have disobeyed;

12

(2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Id.* (quoting *Cmwlth. v. Honore*, 150 A.3d 521, 526 (Pa. Cmwlth. 2016) (Covey, J., single-judge op.)). In addition, "[w]here the order is contradictory or the specific terms of the order have not been violated, there can be no contempt." *Cecil Twp.*, 821 A.2d at 675. "Any ambiguity or omission in the order forming the basis for a civil contempt proceeding must be construed in favor of the [nonmoving party]." *Id.*

Here, the trial court's Mandamus Order contained four specific directives to the Board: (1) issue a written decision in connection with Mancini's appeal; (2) provide copies of the written decision to Mancini and the County; (3) certify the written decision to the County's Human Resources Department; and (4) provide timely notice to Mancini and the County of their right to appeal the written decision. There is no dispute that the Board complied with these specific directives. Rather, Mancini takes issue with the content of the Board's written decision, suggesting that the Board violated the Mandamus Order because a notice of a deadlock was not a final adjudication and, even if it was, the Board's decision did not contain any of the findings of fact and conclusions of law that were necessary to deny Mancini's appeal. In support thereof, Mancini looks not to the language of the Mandamus Order but to the language of the trial court's opinion accompanying the Mandamus Order. Similarly, the trial court, in issuing the Contempt Order, acknowledged that the Board issued a written decision but indicated that such decision failed to comply with the Mandamus Order because it did not address the merits of Mancini's appeal.

While we question whether the content of the Board's written decision is sufficient and/or adequate to address the issues raised by Mancini on appeal, the

13

sufficiency/adequacy of the Board's decision was not at issue in the Mandamus Action and was not addressed in the trial court's Mandamus Order or the accompanying opinion. In the Mandamus Action, Mancini sought to compel the Board to issue a written decision containing "findings and reasons" as required by Career Service Regulation No. 15.02 and Employee Policy No. 3.15.[8] The trial court granted Mancini her requested relief and ordered the Board to "render a written decision regarding [Mancini's] appeal." (R.R. at 188a.) The trial court's Mandamus Order did not require, nor could it require, the Board to issue any specific findings or offer any specific reasoning relative to Mancini's appeal. The trial court's opinion, which accompanied the Mandamus Order, also did not provide, nor could it provide, any specific direction as to what the Board was required to include within its decision other than "findings and reasons." The trial court's opinion merely indicated that the Board's deadlock and the manner in which it communicated such deadlock to the parties did not discharge its duty to issue "a final adjudication . . . in writing containing findings and reasons." (*See* R.R. at 148a; Employee Policy No. 3.15.) In response to the Mandamus Order, the Board issued a written decision containing "findings and reasons." To the extent that Mancini desired to challenge

---

[8] The purpose of a mandamus action is to compel a governmental entity to perform a mandatory, ministerial duty. *See Chadwick v. Dauphin Cnty. Off. of the Coroner*, 905 A.2d 600, 603 (Pa. Cmwlth. 2006), *appeal denied*, 917 A.2d 847 (Pa. 2007). To prevail in mandamus, the plaintiff must demonstrate: a clear legal right for performance of an act by the government; a corresponding duty in the government to perform the ministerial act and mandatory duty; and the absence of any other appropriate or adequate remedy. *Id.* at 603-04. A mandatory duty is "one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority." *Filippi v. Kwitowski*, 880 A.2d 711, 713 (Pa. Cmwlth. 2005) (quoting *Cnty. of Allegheny Deputy Sheriff's Ass'n v. Cnty. of Allegheny*, 730 A.2d 1065, 1067 (Pa. Cmwlth.), *appeal denied*, 743 A.2d 923 (Pa. 1999)). Where the public official has discretion in how to perform the act, mandamus may compel the exercise of discretion, but it may not interfere with the manner in which the discretion is exercised. *Chadwick*, 905 A.2d at 604.

14

the sufficiency/adequacy of the content of the Board's decision and those "findings and reasons," she needed to do so in an appeal of the Board's decision. A challenge of that nature is inappropriate in the context of a contempt proceeding given the nature of mandamus relief and the content of the trial court's Mandamus Order and accompanying opinion. For these reasons, we must conclude that the trial court abused its discretion by issuing the Contempt Order.

Accordingly, we reverse the trial court's order.[9]

_____
P. KEVIN BROBSON, Judge

---

[9] Given our disposition above, we need not consider the Board's remaining arguments relative to the sufficiency of procedures implemented or the sanctions imposed by the trial court in connection with the Contempt Order.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jill E. Mancini                       :

                                   :

              v.                   :     No. 1045 C.D. 2019

                                   :

Northampton County Personnel   :

Appeals Board,                 :

                 Appellant   :

# **O R D E R**

AND NOW, this 27th day of January, 2021, the order of the Court of Common Pleas of Northampton County is hereby REVERSED.

_____

P. KEVIN BROBSON, Judge
