**The COUNTY OF CARBON, Charles Getz, William Ogurek, Wayne E. Nothstein, in their capacity of Commissioners of Carbon County, and Carbon County Tax Claim Bureau**

v.

**PANTHER VALLEY SCHOOL DISTRICT, Panther Valley School Board and Rosemary Porembo.**

**Appeal of: Portnoff Law Associates, Ltd.**

**The County of Carbon, and Charles Getz, William J. O'Gurek and Wayne E. Nothstein, in their Capacity as Commissioners of Carbon County, and The Carbon County Tax Claim Bureau**

v.

**The Panther Valley School District, and The Panther Valley School District School Board, and Rosemary Porembo, in her Capacity as Superintendent of the Panther Valley School District, and Ronald Slivka, Anthony Pondish,**

Anthony DeMarco, David Hiles, Thomas Shober, William Hunsicker, Jeff Markovich, Donald Trimmel, and R. Michey Angst, in their Capacity as Members of the Panther Valley School District School Board, Appellants.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2012.

Decided Jan. 10, 2013.

Robert P. Daday and Jeffrey C. Schwartz, Norristown, for appellant/appellee Portnoff Law Associates, Ltd.

David F. Conn, New Britain, for appellants/appellees Panther Valley School District, David Hiles, Anthony DeMarco, Rosemary Porembo, Panther Valley School District School Board, Ronald Slivka, Anthony Pondish, Thomas Shober, William Hunsicker, Jeff Markovich, Donald Trimmel and R. Mickey Angst.

Jane Roach Maughan, Stroudsburg, for appellees County of Carbon, William J. O'Gurek, Charles Getz and Wayne E. Nothstein.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and BROBSON, Judge.

OPINION BY Judge LEAVITT.

The Panther Valley School District and Portnoff Law Associates, Ltd. (Portnoff) (collectively, School District) appeal the writ of peremptory mandamus issued by the Court of Common Pleas of Carbon County (trial court) to the School District.[1] The writ of mandamus ordered the School District to relinquish tax returns and data in its possession; to pay the County of Carbon commissions on delinquent real estate taxes collected by the School District

---

1. *Amici curiae* briefs have been filed in favor of Appellants by Abington School District, the Borough of Pottstown, the School District of Upper Dublin, the Upper Perkiomen School District and the School District of Cheltenham Township. They all adopt the arguments advanced by Portnoff.

through its agent, Portnoff; and to remit all future delinquent tax collections directly to the County's tax claim bureau for distribution to the School District. Appellants challenge the trial court's order on various grounds, including laches, failure to follow the principles governing mandamus and failure to construe, properly, the statutes governing the collection of real estate taxes in the Commonwealth. We affirm in part and reverse in part.

## Background

On November 13, 2009, the County filed a complaint in mandamus against the School District seeking to revise the way the School District was collecting delinquent real estate taxes under authority of the act commonly known as the Municipal Claims and Tax Liens Act (Tax Lien Act), Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. §§ 7101–7505. The mandamus action asserted that when the School District collected delinquent real estate taxes owed to it, it was required (1) to remit the tax collections to the County's tax claim bureau; (2) to file annual returns with the tax claim bureau reporting on the status of real estate taxes paid and outstanding; and (3) to pay a 5% commission to the County on all school taxes collected by the School District. The County asserted that the Real Estate Tax Sale Law (Real Estate Tax Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803, imposed these duties upon the School District, which had ignored them beginning in 2000. The County sought, *inter alia,* $223,000 in past due commissions and an order that the School District remit all taxes it collected to the tax claim bureau for its accounting and distribution to the School District.

One week later, on November 20, 2009, the County filed a motion for peremptory mandamus and requested an evidentiary hearing. Portnoff petitioned to intervene,

and it was granted intervention. On May 25, 2011, the trial court conducted an evidentiary hearing.

The following facts were elicited at the hearing: Beginning with tax year 2000, the School District contracted with Portnoff to collect delinquent real estate taxes owed to the School District, using the procedures authorized by the Tax Lien Act. Prior to 2000, delinquent real estate taxes owed to the School District had been collected by the County's tax claim bureau in accordance with the Real Estate Tax Law. In January 2001, the School District notified the County of this change and, further, that it would no longer be filing an annual return with the tax claim bureau or pay it commissions. According to the County's solicitor, the County did not lodge an objection upon receiving this news from the School District.

Several years later, this Court issued a decision relating to a school district's collection of delinquent real estate taxes owed to the district. The decision was *Pennsylvania Land Title Association v. East Stroudsburg Area School District,* 913 A.2d 961 (Pa.Cmwlth.2006), *petition for allowance of appeal denied,* 593 Pa. 743, 929 A.2d 1163 (2007). This Court ruled that school districts were required to file annual returns with the county tax claim bureau, even when they did their own tax collecting under authority of the Tax Lien Act.

In 2008, invoking *East Stroudsburg,* the County demanded the School District to file tax returns and to pay the tax claim bureau commissions on the delinquent taxes collected by the School District from 2000 forward. The School District agreed to file annual returns with the Tax Claim Bureau and to pay commissions for tax year 2007 forward, but it refused to pay commissions for tax years 2000 through

2006. The County then filed this mandamus action.

The trial court ordered the School District and Portnoff to relinquish tax data and records for the tax years 2000 through 2011; to make all delinquent taxes they collect made payable to the tax claim bureau and not to the School District; and to pay the County a 5% commission on all delinquent taxes collected for the tax years 2000 through 2011. The trial court authorized the County tax claim bureau to withhold all past due commissions from current tax collections until the commission debt was paid in full. It also directed the County to file a motion for a bill of costs and a motion for attorney fees.[2] An appeal to this Court followed.

The School District raises four issues. First, it asserts that the trial court erred in ordering retroactive commissions for tax years 2000 through 2006 because that order violates the statute of limitations and the doctrine of laches. Further, the order improperly gives *East Stroudsburg,* a case of first impression, retroactive application. Second, it asserts that the trial court erred in ordering that all delinquent tax payments collected by the School District must be paid to the tax claim bureau for distribution to the School District. Third, it contends that the County did not have a right to peremptory judgment under the time-honored principles relating thereto. Fourth, it contends that the trial court erred in awarding costs and attorney fees to the County.

The School District and Portnoff raised these issues in their statements of matters complained of on appeal filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). However, the trial court's Rule 1925(a) opinion does not address them. It simply opines that *East Stroudsburg* is controlling, without explaining how that case disposes of the County's claim for retroactive commissions or its demand that all tax payments collected by the School District must be made payable to the tax claim bureau. Notably, the School District does not challenge the trial court's order that it file annual returns with the tax claim bureau and pay the County commissions as of 2007.

### Writ of Mandamus

We begin with a review of the principles of mandamus. The common law writ of mandamus lies to compel a public official's performance of a ministerial act or a mandatory duty. *Chadwick v. Dauphin County Office of the Coroner,* 905 A.2d 600, 603 (Pa.Cmwlth.2006). Mandamus is a high prerogative writ that is rarely issued and never where the plaintiff seeks to interfere with a public official's exercise of discretion. *Id.* Rather, mandamus is appropriate to compel a public official to fulfill a mandatory duty that is ministerial in nature. As explained by this Court,

> [t]he requirements to sustain an action in mandamus are clear. It is an extraordinary remedy designed to compel public officials to perform a ministerial act or mandatory duty. . . .

*Bradley v. Casey,* 119 Pa.Cmwlth. 180, 547 A.2d 455, 458 (1988).

Peremptory mandamus may be filed at any time "after the filing of a petition for review, if the right of the movant thereto is clear." *Mickens–Thomas v. Board of Probation and Parole,* 699 A.2d 792, 795 (Pa.Cmwlth.1997). The grant of peremptory mandamus is rarer than a writ of mandamus that is entered after a trial. Peremptory mandamus "can be entered only in [the] clearest of cases

---

2. The motions were stayed pending appeal to this Court.

where there is not the slightest doubt as to the absence of an issue of material fact." *Stilp v. Hafer,* 701 A.2d 1387, 1390 n. 6 (Pa.Cmwlth.1997). It is similar to a preliminary injunction in that it may be entered before an answer is filed and without a hearing, where necessary to protect the public interest. GOODRICH AMRAM 2D, Mandamus, § 1098:1. It is the moving party that has the burden of proving that no genuine issue of material fact exists and that judgment may be entered as a matter of law. *Advantage Development, Inc. v. Board of Supervisors of Jackson Township,* 743 A.2d 1008, 1012 (Pa.Cmwlth. 2000). On appeal, the facts are viewed in the light most favorable to the non-moving party. *Id.*

▬▬▬ In this case, the trial court entered peremptory mandamus after a hearing on disputed facts, such as those raised by the School District in its laches defense. Peremptory mandamus is not appropriate where there are facts in dispute. For purposes of our review, we will treat the trial court's order not as peremptory mandamus, but as a writ of mandamus that was entered after a hearing.[3]

### East Stroudsburg

▬▬▬ Under the Real Estate Tax Law, property taxes may be collected by a county on behalf of all county taxing authorities, including school districts. However, school districts may choose to collect their own taxes under authority of the Tax Lien Act. The interplay of these two tax statutes was addressed in *East Stroudsburg.*

Section 201.1(a) of the Real Estate Tax Law permits several methods of tax collection. Counties may use a tax claim bureau or they may contract with private vendors to collect taxes. Section 201.1(a) states:

> In lieu of or in addition to creating a bureau, counties are authorized to provide by ordinance for the appointment and compensation of such agents, clerks, collectors and other assistants and employes, either under existing departments, in private sector entities or otherwise as may be deemed necessary, for the collection and distribution of taxes under this act. *Any alternative collection method shall be subject to all of the notices, time frames, enumerated fees and protections for property owners contained in this act.*

72 P.S. § 5860.201a(a) (emphasis added).[4] The Real Estate Tax Law requires tax collectors to file an annual return with the tax claim bureau that provides a report on all the taxes levied, collected or still outstanding. Section 306(a) states as follows:

> *It shall be the duty of each receiver or collector of any county,* city, borough, town, township, *school district* or institution district taxes *to make a return to the bureau* on or before the last day of April of each year, but no earlier than the first day of January of that year. The return shall be typewritten on a form provided by or acceptable to the county *and shall include a list of all properties against which taxes were levied, the whole or any part of which were*

---

3. Our scope of review in a mandamus action is limited to determining whether the trial court abused its discretion, committed an error of law or whether sufficient evidence exists to support the findings. *Orange Stones Co. v. City of Reading, Zoning Hearing Board,* 32 A.3d 287, 289 (Pa.Cmwlth.2011). As to questions of law our scope of review is plenary. *Crozer Chester Medical Center v. Depart-* *ment of Labor and Industry, Bureau of Workers' Compensation,* 610 Pa. 459, 466, 22 A.3d 189, 194 (2011). Our standard of review of a trial court's grant of mandamus is *de novo. Id.*

4. Section 201.1 was added by the Act of March 22, 2002, P.L. 205.

*due and payable in the calendar year immediately preceding and which remain unpaid,* giving the description of each such property as it appears in the tax duplicate, and the name and address of the owner as it appears in the tax duplicate, together with the amount of such unpaid taxes, penalties and interest due to but not including the first day of the month following the return. Such return shall be accompanied by a signed affidavit that the return is correct and complete.

72 P.S. § 5860.306(a) (emphasis added).

In *East Stroudsburg,* the Pennsylvania Land Title Association, whose members are title insurers, filed a mandamus action against two school districts, their superintendents and eight township tax collectors that had not filed the above-described Section 306(a) returns with the tax claim bureau for several years. The school districts had contracted with Portnoff to collect their delinquent taxes, and Portnoff did not file the Section 306(a) returns on the school district taxes it collected for the school districts. As a result, the tax claim bureau lacked records of which delinquent school taxes had been paid and which remained outstanding. Further, this information was not available from the school districts, although it was available from Portnoff for a fee. However, Portnoff could not certify its report because it was not a government agency, as was the tax claim bureau. The lack of a reliable rec-

ord on taxes prompted the title insurers' action. The trial court ordered the school districts, by their agent Portnoff, to file Section 306(a) returns with the bureau.[5] The school districts appealed.

Before this Court, the school districts argued that because they chose to collect delinquent taxes under the Tax Lien Act, they were not required to comply with Section 306(a) of the Real Estate Tax Law. We disagreed, concluding that the Real Estate Tax Law gave school districts the authority to use other methods of collection, but it still required compliance with certain of its provisions. We held that the Tax Lien Act and Real Estate Tax Law were not mutually exclusive and that it was possible to give effect to the provisions of both statutes. Accordingly, the school districts were ordered to file the annual returns.

### Retroactive Commissions

We turn now to the first issue raised by the School District, *i.e.,* whether the trial court erred in ordering it to pay retroactive commissions for tax years 2000 through 2006.[6] The School District argues that the order for retroactive commissions violated the statute of limitations, the doctrine of laches and improperly gave *East Stroudsburg,* a case of first impression, retroactive application.

 The doctrine of laches bars relief when " 'the complaining party is guilty of

---

**5.** The trial court also ordered the school districts to provide records for tax years 2002–2004; to report the status of the real estate taxes for 2002–2004; to make payment for the delinquent taxes to the tax claim bureau; and to provide tax lien payoff information at no charge, within five business days of a written request.

**6.** The School District notes that it began paying commissions in 2008, for tax year 2007. It frames the issue as whether it owes retroactive commissions from 2000 through 2008.

However, it is not seeking return of commissions paid for tax years 2007 onward and agrees it owes future commissions. Thus, the period of time at issue is tax years 2000 through 2006. *See* Portnoff Brief at 9 (stating that commissions were paid tax years 2007 onward and "[a]t issue in this case is the County's claim for commissions for tax years 2000 to 2006, for which no returns were made and no collection services were rendered by the [County].")

want of due diligence in failing to institute his action to another's prejudice.' " *East Stroudsburg*, 913 A.2d at 973 (*quoting Leedom v. Thomas*, 473 Pa. 193, 200, 373 A.2d 1329, 1332 (1977)). The School District argues that because the County waited almost nine years to institute a monetary claim, it will suffer a financial hardship if forced to pay substantial retroactive commissions for which it has not budgeted. Thus, it believes the County's claim is barred by the doctrine of laches. The County counters that in *East Stroudsburg* this Court rejected the doctrine of laches defense raised by the school districts. Therein, we noted that the defense was applicable in mandamus actions and that it bars relief where the plaintiff has not acted diligently to pursue an action and the delay has prejudiced the defendant. *East Stroudsburg*, 913 A.2d at 973.

■ However, the defense of the doctrine of laches was rejected in *East Stroudsburg* because the record contained no evidence of prejudice to the school districts. Here, by contrast, the School District presented unrefuted evidence of dilatory conduct by the County that caused prejudice to the School District.

First, in January 2001, the School District notified the County that it would not pay it commissions or file returns on the delinquent taxes owing the School District that it collected. The County waited eight years to make a demand for the commissions and did not file its mandamus action for almost nine years, *i.e.*, in November of 2009.

Second, the School District will suffer significant financial hardship if it is suddenly forced to pay over $300,000 in back commissions. Ken Marx, the School District's business manager, testified that a payment of that amount would result in cuts to school programs and services. He explained that $250,000 equaled 25% of the District's available liquid reserves. A reduction in the School District's reserve would adversely impact its ability to refinance the debt. The School District also pointed out that there are statutory limits on its taxing power so it cannot easily recoup the money. The County did not challenge Marx's testimony or offer any rebuttal evidence on this point.

We hold that the doctrine of laches barred the County's demand for commissions for the years 2000 to 2006. The County was informed of the School District's decision not to file annual returns or to pay commissions in January 2001. The County responded with silence until 2008, when it first objected. It then waited until November of 2009 to file its action. The School District has established prejudice with its uncontroverted evidence that the commission debt will adversely impact its finances and, ultimately, its educational mission.[7] The doctrine of laches precludes an award of commissions to the County for tax years 2000 through 2006 and the trial court erred in ordering their payment.

---

7. The School District also argues that *East Stroudsburg* was a case of first impression and introduced a new rule of law; therefore, it should not be given retroactive application. The County retorts that *East Stroudsburg* did not address the issue of commissions, thus, it did not address an issue of first impression. Because the doctrine of laches applies, we need not reach this issue. However, we are constrained to note the faultiness of the County's argument. If *East Stroudsburg* did not address an issue of first impression relating to the present case, then, logically, one must conclude that the present case is actually a case of first impression. Either way, the issue of retroactivity would remain.

Additionally, because the doctrine of laches applies, we need not decide whether the award also violated the statute of limitations.

### Payment of Delinquent School Taxes to the Tax Claim Bureau

In its second issue, the School District challenges the trial court's order that all delinquent taxes collected by the school district must be done in the name of the tax claim bureau and "shall not be payable to, received by, or accepted by [the School District]." Trial Court Order, September 29, 2011; R.R. 401a. It argues that prohibiting the School District from collecting delinquent tax payments in its own name renders the Tax Lien Act useless to school districts, in violation of the General Assembly's intent.

At the hearing, Michelle Portnoff testified that requiring the taxes to be made payable to the tax claim bureau will make it impossible for the School District to collect taxes on its own behalf. She explained that a school district cannot collect payments if they are to be directed and paid to another government entity. A school district cannot set up payment plans with taxpayers if the district does not receive and track the payments. Further, a school district cannot force the tax claim bureau to share payment information because there is no statutory requirement that it do so. Because the County does not want the School District to collect these taxes on its own, it is not likely to be cooperative. If the School District cannot actually collect the delinquent taxes in its own name, then the Tax Lien Act has set up a meaningless system for school district tax collection.

The County did not contradict Portnoff's testimony. In fact, the tax claim bureau's director, Renee Roberts, testified that the Real Estate Tax Law does not require it to cooperate with school districts, or their agents. She did not know how the tax claim bureau could or would share tax collection information with the School District.

The County argues that Section 204(b)(1) of the Real Estate Tax Law supports the trial court's determination that all tax collection payments be made payable to the tax claim bureau.[8] In its entirety, Section 204 of the Real Estate Tax Law states as follows:

(a) Each county bureau shall receive and collect such taxes and give proper receipt therefor when payment is offered, and to make distribution of the moneys received as provided by this act.

(b)(1) *All taxes for which returns have been made to the bureau shall be payable only to the bureau* and shall not be payable to or be accepted by any taxing district or tax collector.

(2) In the event that any such taxes are received or accepted by any taxing district contrary to the provisions of this section, *the taxing district shall be liable to the bureau for,* and the bureau shall deduct from any distribution to which the taxing district is entitled under section 205, *all charges, fees, costs, commission* and interest to which the bureau would *otherwise have been entitled under the act if payment had been made directly to the bureau.*

72 P.S. § 5860.204 (emphasis added).[9]

The School District argues that Section 204(b)(1) must be read in conjunction with

---

**8.** Notably, the trial court did not explain its reasoning on this issue and makes no reference to Section 204(b)(1) of the Real Estate Tax Law.

**9.** Portnoff raises an additional argument regarding the construction of Section 204(b)(1). It argues that commissions cannot be ordered except where Section 306(a) returns have been filed. None were filed for the years

Section 204(b)(2). Section 204(b)(2) does not bar a taxing district from receiving the payments so long as it has filed a return with the tax claim bureau. If Section 204(b)(1) had been intended to create an absolute bar to collection by a taxing district, then the legislature would have directed the taxing district to surrender any payments received to the tax claim bureau. It did not do so. Instead, Section 204(b)(2) provides that the taxing district is liable for commissions and costs that the tax claim bureau would have received had the payment been made to it directly. As such, Section 204(b)(2) establishes that the tax claim bureau has the right to expect a commission, but it does not have the right to exercise physical control over the payment received by a school district.

 In support of this construction of Section 204(b) of the Real Estate Tax Law, the School District points to *Wallingford Swarthmore School District v. Kuyumjian*, 155 Pa.Cmwlth. 635, 625 A.2d 1305 (1993). In *Wallingford*, the taxpayer argued that a school district was barred from instituting an action in assumpsit to collect delinquent school taxes once it had returned the duplicate tax bills to the tax claim bureau as unpaid. The school district collected these delinquent taxes under authority of the Local Tax Collection Law, Act of May 25, 1945, P.L. 1050, *as amended*, 72 P.S. §§ 5511.1–5511.42. In evaluating whether the collection efforts were appropriate, we examined the directives in Sections 204(b)(1) and (b)(2) of the Real Estate Tax Law.

Although Section 204(b)(1) appears to forbid collection by taxing districts, Section 204(b)(2) expressly contemplates the opposite. We reasoned as follows:

> Subsection 204(b)(2) clearly contemplates that payment may be made to the taxing district. This subsection serves to assure the tax claim bureau that it will receive its costs and commissions from money collected by the taxing districts directly through suits in assumpsit, a method that only the districts are authorized to use.

*Wallingford*, 625 A.2d at 1308. We explained that to find otherwise would render Section 204(b)(2) mere surplusage, in violation of the requirement that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. 1921(a). It would also be contrary to our duty to construe statutes *in pari materia* together. 1 Pa.C.S. § 1932(b). ("Statutes *in pari materia* shall be construed together.").

Although *Wallingford* involves a school district using an alternative tax collection scheme authorized by another statute, *i.e.*, the Local Tax Collection Law, its rationale applies with equal force here. Section 204(b) cannot be construed differently in this case because the alternative tax collection scheme chosen by the School District here was that authorized by the Tax Lien Act, as opposed to the Local Tax Collection Law. *Wallingford* established that Section 204(b)(2) permits a school district to collect delinquent real estate taxes owed to the district in its own name, not the name of tax claim bureau.

The School District also directs this Court to Section 501(a.1) of the Real Estate Tax Law, which instructs the tax claim bureau to issue receipts for payments collected by taxing districts. It states as follows:

---

2000–2006 and, thus, there is no foundation for the trial court's order that the School District owes commissions for those years. This may be a correct and plain reading of

Section 204(b)(1); however, we do not decide this issue because we reverse the trial court's order on grounds of laches.

Upon receipt of payment or upon certification to the bureau that payment of all taxes and other charges otherwise payable to the bureau under this act has been made to a taxing district, the bureau shall issue written acknowledgment of receipt and a certificate of discharge and shall enter satisfaction on the record.

72 P.S. § 5860.501(a.1). This provision acknowledges that taxing districts may use a collection service other than a county tax claim bureau and need not make collections payable to the tax claim bureau. This is why Section 501(a.1) requires a tax claim bureau to issue a receipt and certificate of discharge when payments "otherwise payable to the bureau" are collected by a taxing district. The reference to taxes "otherwise payable" recognizes that some tax payments will not be made payable to the tax claim bureau. Nevertheless, the bureau will have to enter a "satisfaction on the record" when it receives a certification that taxes have been paid.

We agree that *Wallingford* and Section 501(a.1) of the Real Estate Tax Law support the School District's construction of Section 204(b) of the Real Estate Tax Law. Section 501(a.1) of the Real Estate Tax Law authorizes the tax claim bureau to discharge a lien "upon receipt of payment *or* upon certification to the bureau that payment of all taxes . . . otherwise payable to the bureau . . . have been made." 72 P.S. § 5860.501(a.1) (emphasis added). Construing Section 204(b) to prohibit a taxing district from receiving payments would negate the second option of discharging a lien. Markedly, the County does not offer an analysis that gives effect to Section 204(b)(2) or Section 501(a.1) or explain how we can disregard *Wallingford*.

10. Because of our decision, we need not address the School District's claim that peremptory judgment was improper because the

We hold that the trial court erred in ordering the School District to collect delinquent real estate taxes in the name of the County's tax claim bureau. In so ordering, the trial court erred in its construction of Section 204(b) of the Real Estate Tax Law.

### Conclusion

For these reasons, we reverse the trial court's directive that delinquent tax payments must be made directly to the tax claim bureau and its determination that retroactive commissions are due and owing.[10] We affirm the trial court's order regarding the disclosure of records and the payment of commissions for tax year 2007 and forward.

### *ORDER*

AND NOW, this 10th day of January, 2013, the order of the Court of Common Pleas of Carbon County dated September 29, 2011, in the above-captioned matter is hereby REVERSED IN PART and AFFIRMED IN PART, in accordance with the attached opinion.

County did not have a clear right to recovery, or whether costs could be assessed against the School District. These issues are moot.