## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ludovico Cognata and Alberto Cognata :
:
v. :
:
Municipality of Norristown and :
Norristown Municipal Council :
:
Theodore Hoffman, Michael Hoffman, :
Penn & Arch, LLC, Component :
Enterprises, Inc. :
:
v. : No. 1326 C.D. 2018
: ARGUED: June 3, 2019
Municipality of Norristown and :
Norristown Municipal Council :
:
Appeal of: Municipality of Norristown :
and Norristown Municipal Council :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                          FILED: July 23, 2019

The Municipality of Norristown and the Norristown Municipal Council (together, Norristown) appeal from the August 24, 2018 Order of the Court of Common Pleas of Montgomery County (Trial Court), which granted mandamus relief to Ludovico Cognata, Alberto Cognata, Michael Hoffman, Theodore Hoffman, Penn & Arch, LLC, and Component Enterprises, Inc. (together, Landowners) and compelled Norristown to repair a deteriorated culvert beneath Landowners' properties. For the

reasons that follow, we reverse the Trial Court's Order and remand this matter to the Trial Court for further proceedings.

## Background

The Cognatas own a commercial property located at 312 Arch Street in Norristown, where they operate Vico's Auto Body Shop. The Hoffmans own a commercial property across the street from the Cognatas at 415 Arch Street in Norristown, where they operate Component Enterprises, Inc.

At the center of this litigation is a 100-year-old culvert that was built to carry the Saw Mill Run Creek underground through the east end of Norristown. The Saw Mill Run Creek is a tributary that empties into the Schuylkill River. Several streets at the east end of Norristown were built over the Saw Mill Run culvert due to the increasing population.

The culvert runs beneath Landowners' properties. It is undisputed that portions of the culvert are severely deteriorated and require imminent repair to avoid the collapse of Landowners' properties.

On April 8, 1964, due to chronic flooding in the area of the Saw Mill Run Creek, Norristown adopted Resolution 1741, creating the Saw Mill Run Valley Flood Control Project (Flood Control Project) and requesting assistance from the Commonwealth of Pennsylvania (Commonwealth) to implement and construct the Flood Control Project. The Resolution stated that "Norristown endorses and sponsors the Flood Control Project as recommended by the State of Pennsylvania, Department of Forests and Waters [(predecessor to the Department of Environmental Protection (DEP))], and agrees to meet the following requirements of local participation, and furnish the required assurances itemized below." Notes of Testimony (N.T.), 1/23/18, Ex. P-1, at 1. Those "Assurances" provided, in relevant part, that Norristown would "[p]rovide,

without cost to the Commonwealth or Department of Forests and Waters, all lands, easements[,] and rights-of-way necessary for construction and maintenance of the [Flood Control P]roject" and that "[u]pon completion of construction, [Norristown would] maintain and operate the [Flood Control P]roject in accordance with recommendations of the Commonwealth." *Id.*

The Flood Control Project consisted of two phases. Phase 1 involved construction of the Fornance Street Dam. Phase 2 involved construction of the Saw Mill Run channel downstream from the dam, which would conduct the flow of stormwater to the Schuylkill River.

In February 1965, the Commonwealth and Norristown executed a Sponsorship Agreement for construction and maintenance of the Flood Control Project. The Sponsorship Agreement obligated Norristown, among other things, to "[f]urnish and install automatic drainage gates at locations designated by the [Department of Forests and Waters] at the outlet of sanitary and/or storm sewers entering the channel within the limits of the [Flood Control Project]." N.T., 1/23/18, Ex. P-2, at 2.

Phase 2 of the Flood Control Project used the existing Saw Mill Run culvert beneath Landowners' properties. Phase 2 involved pouring cement across the stone bottom of the culvert, which was needed to avoid erosion and to speed up the flow of water running through the culvert.

In 1970, Norristown obtained permanent flow easements beneath the properties at 415 Arch Street and 312 Arch Street from the prior owners of those properties. The easements granted to Norristown the perpetual right to construct, reconstruct and maintain the Saw Mill Run culvert beneath the properties. N.T., 1/23/18, Exs. P-10 to P-13.

The Cognatas, who have owned their property since the 1970s, first notified Norristown about problems with stormwater drainage and subsurface erosion at their property in 2015. By letter dated December 18, 2015, Norristown sent the Cognatas the following notice, titled "Immediate Action Required":

> Norristown recently had [its] engineering firm, Pennoni Associates Inc., perform two inspections of the Saw Mill Run Stream Enclosure that runs beneath the property you own at 312 Arch St[reet], Norristown, PA. The first inspection was performed on November 5, 2015[,] and the follow-up inspection was performed on December 8, 2015. The engineer's report stated that there were multiple critical deficiencies identified and these deficiencies are going to require immediate action. . . .

> [T]he first inspection report[] . . . revealed that there is severe deterioration to the roof structural elements and these defects were found to occur at the entrance of and beneath Vico's Auto Body Shop. It also noted that several repairs have been made to this area in the past and additional corrective action needs to be taken. The second report was a follow[-]up inspection at the request of [Norristown] to determine if any additional damage was found from the time the first inspection report was written.

> [Norristown] would like to emphasize the concern that it has for the condition located beneath your property at 312 Arch St[reet] and potential damage it may possibly cause to public streets, sidewalks[,] or any other public right of ways [sic] located in the immediate area. [Norristown] has already closed the sidewalk from in front of the property at 312 Arch St[reet] to the corner of Penn St[reet]. *[Norristown's] position continues to be that each private property owner is responsible for both their [sic] private property that lies above the channel and for the portion of the channel that runs below their [sic] private property.* . . .

N.T., 1/23/18, Ex. P-15 (emphasis added).

In 2014, the Hoffmans also began experiencing problems with stormwater drainage at their property and reported it to Norristown. On June 6, 2016, Norristown

4

sent a notice to the Hoffmans, titled "Immediate Action Required," mandating that they repair the conditions caused by the deteriorating culvert. On June 23, 2016, Norristown sent the Hoffmans a second notice, citing them for violating the prior notice and threatening to impose penalties of up to $1,000 per day for failure to comply.

In July 2017, the Cognatas and the Hoffmans filed separate actions against Norristown in the United Stated District Court for the Eastern District of Pennsylvania (District Court), asserting claims under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution, as well as state law claims. Landowners asserted, *inter alia*, that Norristown's failure to maintain and repair the culvert beneath their properties violated their substantive due process rights. The District Court, acting through two different judges, granted Norristown's Motions to Dismiss in both actions.

Following the dismissal of the federal claims, in December 2017, both matters were transferred to the Trial Court for disposition of Landowners' state law claims for mandamus, breach of easement agreement, negligence, and trespass to land. In their Complaints, Landowners averred that "[i]f Norristown is not compelled to immediately repair the severe structural deficiencies" in the culvert and to "remedy the resulting imminent major safety hazard," Landowners, their business invitees, "and the public are at grave and imminent risk of harm due to the major safety hazard." Cognata Compl., ¶ 77; Hoffman Compl., ¶ 83.[1]

Upon motion of the parties, the Trial Court consolidated the Cognata and Hoffman cases by Order dated January 23, 2018. On January 23 and January 26, 2018, the Trial Court held a two-day hearing, which the Trial Court characterized as a non-

---

[1] Previously, in 2016, the Cognatas filed suit against Norristown in the Trial Court seeking similar relief. After two hearings, on August 2, 2016, a different Trial Court judge entered an Order denying the Cognatas' Motion for Peremptory Judgment. The Cognatas subsequently withdrew that action. The Hoffmans were not parties to the prior lawsuit.

5

jury "trial" on Landowners' request for mandamus relief. Trial Ct. Op., 8/24/18, at 5.[2] The Trial Court explained its reason for doing so as follows:

> [T]he claims for mandamus alone came before the undersigned for a two-day hearing, commencing January 23, 2018, and resuming January 26, 2018. The notice scheduling the hearing stated that it was to be held on "Plaintiff's [sic] Emergency Motion for Preemptory [sic] Judgment." No doubt taking cues from the notice, the [c]ourt [r]eporters recording notes of testimony of the two days of the hearing, who were two different individuals, entitled the transcripts, respectively, "Plaintiff's [sic] Emergency Motion for Pre-Emptory [sic] Judgment (filed 12/1/17)" and "Plaintiffs' Emergency Motion for Peremptory Judgment[.]"
>
> *However, no such motion for "peremptory judgment"—or indeed any motion of any type filed on, before, or after December 1, 2017, the date the record in the Hoffman federal case was transferred to this Court's docket—appears on the official docket of either action or in the Court's file, and no party indicated to the Court at the hearing that it was proceeding on a motion under Pa.R.C.P. [No.] 1098 ("Peremptory Judgment").*[3] Obviously no such motion for "peremptory judgment" in mandamus under Pa.R.C.P. [No.] 1098 would have been part of the records of the federal[]court proceedings transferred to this Court November 1 and December 1 in the Cognata and Hoffman cases, respectively, since the federal proceedings were not governed by and did not follow the Pennsylvania Rules of Civil Procedure.
>
> . . .

[2] At oral argument before this Court, Landowners' counsel explained that, after this matter was transferred to the Trial Court, Landowners sent a letter to the Trial Court requesting an expedited hearing due to the severity of the culvert's deterioration.

[3] Pa. R.C.P. No. 1098 provides:

> At any time after the filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear. Judgment shall not be entered without prior notice to all parties unless the exigency of the case is such as to require action before notice, in which event notice shall be given as soon as possible.

*The hearing before the undersigned proceeded for all intents and purposes as if it were a trial under the rule governing trials in mandamus actions*, Pa.R.C.P. [No.] 1099 ("The trial of actions in mandamus by a judge sitting without a jury shall be in accordance with [Pa. R.C.P. No.] 1038."), rather than on a motion for peremptory judgment under Pa.R.C.P. [No.] 1098.

*Id.* at 3-4 (internal citations omitted) (some alterations in original) (emphasis added).[4]

At the hearing, no one disputed that the culvert "was in such need of repair that [it was] in danger of collapsing at an unforeseen point in the future"; the only question before the Trial Court "was who had the duty to remedy the problem." *Id.* at 1. The Trial Court provided the following synopsis of the hearing:

Over the two days of hearings, [Landowners] produced, in addition to various documentary evidence and videotapes of a news report and testimony from a deposition, four live witnesses: Andrew Orlovsky, civil engineering manager with [DEP's] Bureau of Waterways Engineering and Wetlands; Ludovico Cognata, co-owner of one of the two properties in issue; Michael Hoffman, co-owner of the other; and Joseph Fazio, P.E., Landowners' engineering expert. [Norristown] introduced the testimony of municipal engineer Khaled Hassan, P.E., and, as exhibits, his curriculum vitae and, on cross-examination of [Mr.] Fazio, a third-party

---

[4] On appeal, Norristown argues that it was unaware this proceeding was being treated as a trial until it received the Trial Court's Opinion characterizing it as such. Norristown maintains that, at all relevant times, it believed the proceeding was a hearing on Landowners' Motion for Peremptory Judgment, based on the nomenclature on both the hearing notice and the transcript. In essence, Norristown claims that its due process rights were violated by the Trial Court's failure to properly notify the parties that it was conducting a trial.

At oral argument, this Court asked Norristown's counsel if Norristown would have presented any additional evidence or witnesses had it known that the proceeding was a full trial on the merits. Norristown's counsel identified several witnesses, including other engineers who had inspected the culvert, and stated that Norristown also would have conducted discovery, as the case had only been in the Trial Court for two months at that time. Nonetheless, in light of our conclusion that the Trial Court erred in granting mandamus relief, *see infra* at 15-16, we need not address Norristown's due process claim.

structural engineer's report on an inspection of the properties completed in February 2016.

> Near the close of testimony on the second day of hearings, the parties indicated [that Norristown] would produce the testimony of a second witness, [Crandall] Jones ([Norristown's] administrator), by way of deposition. That deposition never occurred, and [Landowners] later asked for an adverse inference from his failure to appear.

*Id.* at 6-7 (internal citations omitted).

Following the hearing, the Trial Court concluded:

> [Norristown's] defense to the claims in mandamus largely adopted the posture of a negative: [L]andowners failed to prove with sufficient certainty who, if anyone, bore responsibility for the culvert[] under [L]andowners' properties, and therefore [Norristown] could not be compelled in mandamus to take such responsibility. Indeed, some of the evidence surrounding [Norristown's] having entered into obligations with the Commonwealth . . . and [L]andowners to implement and maintain the infrastructure of [the Flood Control Project] in the town was murky and shrouded in the past, but over two days of hearings, a clearer picture of the [Flood Control Project] and the watercourses' role in it emerged.

> The Commonwealth, though not a party to this litigation, weighed in on the matter through a witness [L]andowners had subpoenaed to appear, [Mr. Orlovsky], a high-ranking engineer for [DEP] familiar with the facts of the case on, and under, the ground, who favored the position, based on his involvement with the issue, that [Norristown], not [L]andowners, was responsible for maintaining the culvert[], watercourses, and entire [Flood Control Project] in safe and working condition. After [the] hearing, the [Trial] Court found sufficient proof to establish that [Norristown] did bear such responsibility, and to compel it to be shouldered [with that responsibility] in this action in mandamus.

*Id.* at 1-2. Specifically, the Trial Court concluded that "Norristown has a duty, memorialized in the obligations it undertook with the [Commonwealth], to maintain the culvert[] as a functioning part of the [Flood Control Project]." *Id.* at 55.

8

On August 24, 2018, the Trial Court entered an Order granting mandamus relief to Landowners and compelling Norristown to:

(1) immediately undertake, at its own expense, remediation and repairs of the culvert beneath Landowners' properties;

(2) minimize disruption of Landowners' businesses during the repairs of the culvert;

(3) assist Landowners in restoring their properties to their original condition before the subsurface erosion from the culvert caused damage to the properties, including the parking lots and building structures; and

(4) properly maintain and make any future necessary repairs of the culvert beneath Landowners' properties, including conducting annual inspections of the culvert under the supervision of the Commonwealth and providing copies of any written reports to Landowners.

*Id.* at 63-64. The Trial Court further directed Norristown to "coordinate its actions with [DEP], which shall have the right of supervision, inspection, and control over the project and the remediation and repairs required by this [O]rder . . . ." *Id.* at 64.

On September 5, 2018, Norristown filed a Post-Trial Motion pursuant to Pa. R.C.P. No. 227.1.[5] While the Post-Trial Motion was pending in the Trial Court, Norristown filed a Notice of Appeal with this Court on September 25, 2018. On November 28, 2018, this Court directed Norristown to address in its brief the appealability of the Trial Court's August 24, 2018 Order in light of the still-pending Post-Trial Motion.[6]

---

[5] Pa. R.C.P. No. 227.1(c) provides that a party shall file post-trial motions within 10 days after "notice of nonsuit or of the filing of the decision or adjudication in the case of a trial without a jury."

[6] "[T]his Court's scope of review in a mandamus action is limited to determining whether the [T]rial [C]ourt abused its discretion or committed an error of law and whether sufficient evidence exists to support the [T]rial [C]ourt's findings." *Orange Stones Co. v. City of Reading, Zoning Hearing Bd.*, 32 A.3d 287, 289-90 (Pa. Cmwlth. 2011).

**Issues**

Norristown presents the following questions for our review:

(1)    Is the Trial Court's August 24, 2018 Order appealable?

(2)    Did the filing of a single Notice of Appeal under the Cognata docket number preserve Norristown's appeal rights in the Hoffman action?

(3)    Did the Trial Court err in failing to apply the proper standard for peremptory judgment pursuant to Pa. R.C.P. No. 1098, as evidenced by the pre-hearing notice received by the parties, instead applying the standard for a trial under Pa. R.C.P. No. 1099, without giving notice to Norristown?

(4)    Did the Trial Court err in determining that Landowners' actions were not barred by the two-year statute of limitations, where Norristown properly pled the statute of limitations as an affirmative defense, produced supporting facts, and argued same in its Proposed Findings of Fact and Conclusions of Law?

(5)    Did the Trial Court err in concluding that Landowners met the necessary burden of proof for mandamus relief?

(6)    Did the Trial Court abuse its discretion in interpreting several exhibits admitted by Landowners and concluding that Norristown had a duty and Landowners had a clear right to relief?

**Analysis**

**1. Appealability of Order**

We must first address the appealability of the Trial Court's August 24, 2018 Order, as it implicates this Court's jurisdiction.

On September 5, 2018, Norristown filed its Post-Trial Motion. While the Post-Trial Motion was pending in the Trial Court, Norristown filed a Notice of Appeal with this Court on September 25, 2018, which divested the Trial Court of jurisdiction to

10

consider the Post-Trial Motion. Because the Post-Trial Motion is still outstanding, no final, appealable order has been entered on the Trial Court docket.

Normally in such circumstances we would remand for the Trial Court to rule on the pending Post-Trial Motion. *See* Pa. R.A.P. 1701(b)(5). However, it is evident from the parties' submissions to this Court, as well as their statements at oral argument, that both Norristown and Landowners are eager to reach a final resolution quickly in this case, due to the severity of the culvert's deterioration and the imminent risk of danger to Landowners' properties, both of which are undisputed. Therefore, the parties have urged this Court to consider the appeal in the interests of justice without awaiting a decision on the Post-Trial Motion.

For this reason, we will consider the merits of Norristown's appeal pursuant to Pa. R.A.P. 313(b), which permits an immediate appeal as of right from a collateral order "where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."

## 2. Filing of Single Notice of Appeal

Both Norristown and Landowners assert that it was appropriate for Norristown to file a single Notice of Appeal under the Cognata docket number because the Trial Court did not enter a separate order in the Hoffman action, and the Hoffman docket was devoid of any substantive entries once the Trial Court consolidated the matters on January 23, 2018.

Although the Trial Court issued an order consolidating the Cognata and Hoffman actions, it was technically not a "complete consolidation" because the plaintiffs in the two actions are not identical. *See generally Kincy v. Petro*, 2 A.3d 490 (Pa. 2010). As a result, Norristown should have filed separate appeals with this Court. However,

11

notwithstanding this procedural error, we will address the merits because neither the Cognatas nor the Hoffmans challenge the consolidation on appeal, and, as stated earlier, all parties are eager for a prompt resolution of this dispute due to the condition of the culvert.

### 3. Grant of Mandamus Relief

Turning to the merits of the appeal, we address Norristown's contention that the Trial Court erred in granting mandamus relief to Landowners. Norristown asserts that the act Landowners sought to have performed – repair of the culvert – is not a ministerial act, nor did Landowners establish that Norristown had a mandatory legal duty to repair the culvert beneath their private properties. We agree with Norristown.

It is well settled that "[m]andamus is an extraordinary remedy designed to compel the performance of a ministerial act or a mandatory duty." *Orange Stones*, 32 A.3d at 290. A court may grant mandamus relief only "where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a lack of any other appropriate and adequate remedy." *Id.* The plaintiff's "right to performance of a mandatory duty must be well defined, clear, and specific; where any doubt exists, mandamus relief will not lie." *Kegerise v. Delgrande*, 183 A.3d 997, 1004 (Pa. 2018). A plaintiff seeking a writ of mandamus has the burden of proving his or her legal right to such relief. *Smires v. O'Shell*, 126 A.3d 383, 387 (Pa. Cmwlth. 2015).

We conclude that Landowners' request for mandamus relief was improper in this case. First, the act that Landowners sought to have performed – repair of the culvert – is not a ministerial act. A ministerial act is an act that "a public officer is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act." *Council of City of Phila. v. Street*, 856 A.2d 893,

12

896 (Pa. Cmwlth. 2004) (citation omitted). In other words, if all discretionary precursors to an official act have been completed, and all that remains to be done is the act itself, a court may compel a municipal official to perform such act. "While mandamus does not lie to compel a government body which is vested with discretionary authority to use it in a particular manner, mandamus is appropriate to compel a government body to perform a discretionary act *when it has a legally mandated duty to perform such act and has refused to do so*." *Dep't of Auditor Gen. v. State Employees' Retirement Sys.*, 836 A.2d 1053, 1069 (Pa. Cmwlth. 2003) (emphasis added).

Here, the Trial Court determined that the source of Norristown's duty to repair the culvert was "memorialized in the obligations it undertook with the [Commonwealth], to maintain the culvert[] as a functioning part of the [Flood Control Project]." Trial Ct. Op., 8/24/18, at 55; *see id.* at 45 ("Norristown has . . . a duty [to repair the culvert], and *has undertaken it through contractual and other legal obligations both to the Commonwealth and to the people of the town for the benefit of whom Norristown entered into the agreements* . . . to implement the [Flood Control Plan] . . . .") (emphasis added). However, Norristown's contractual obligations under its agreements with the Commonwealth are not enforceable in a mandamus action. Rather, "the use of mandamus is limited to the enforcement of rights and duties imposed *by law*, and, *if the right or duty rests wholly on contract, the writ will not issue to enforce it*." *Kaelin v. Univ. of Pittsburgh*, 218 A.2d 798, 801 (Pa. 1966) (emphasis added); *see Kegerise*, 183 A.3d at 1002.

Second, Landowners failed to establish that their right to relief was clear. Our Supreme Court has held that "[a] clear legal right to relief is shown where the right to require performance of the act is clear, and a corresponding duty is shown where the

governing law contains directory language, requiring that an act shall be done." *Phila. Firefighters' Union, Local 22 v. City of Phila.*, 119 A.3d 296, 304 (Pa. 2015) (internal citation omitted).

As the Trial Court recognized, the sole issue at the hearing was *which entity or persons* had a duty to repair the deteriorating culvert. *See* Trial Ct. Op., 8/24/18, at 1 (noting that the only question before the Trial Court "was who had the duty to remedy the problem"). That recognition alone precludes the grant of mandamus relief, as it was unclear whether Norristown, Landowners, or some other entity had a duty to repair the culvert. The purpose of a writ of mandamus "is *to enforce legal rights already clearly established*," not to establish legal rights that did not previously exist. *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1034 (Pa. Cmwlth. 2014) (emphasis added); *see Orange Stones*, 32 A.3d at 290 (stating that the purpose of mandamus relief "is not to establish legal rights[,] but only to enforce those legal rights that have already been established").

Third, Landowners have other adequate, appropriate remedies, as evidenced by the additional causes of action in tort and contract pled in their Complaints.[7] A lack of any other adequate remedy "is established where there is no alternative form of relief." *Phila. Firefighters' Union*, 119 A.3d at 304.

Here, Landowners have a remedy at law under what is commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. §§ 8541-8542, for damages caused by Norristown's alleged negligence in maintaining the culvert.[8]

---

[7] In their Complaints, Landowners also asserted causes of action against Norristown for breach of easement agreement, negligence, and trespass to land.

[8] Generally, municipalities are immune from tort liability under Section 8541 of the Tort Claims Act, 42 Pa. C.S. § 8541. *Gibellino v. Manchester Twp.*, 109 A.3d 336, 342 (Pa. Cmwlth. 2015). However, a municipality may be liable for damages that are: (1) recoverable under common

14

Alternatively, they could file an action in equity for declaratory or injunctive relief to compel Norristown to repair the culvert. Because these potential remedies exist, mandamus cannot lie. *See Hamm v. Bd. of Educ.*, 470 A.2d 189, 191 (Pa. Cmwlth. 1984) (concluding that mandamus was inappropriate where other remedies were available, such as an action for declaratory judgment or injunctive relief).

We reiterate that "[m]andamus is so rare that even where the plaintiff can establish the grounds for mandamus, its issuance is not automatic." *Chadwick v. Dauphin Cty. Office of Coroner*, 905 A.2d 600, 604 n.6 (Pa. Cmwlth. 2006); *see Anderson v. City of Phila.*, 36 A.2d 442, 444 (Pa. 1994) ("[T]he courts have repeatedly held that mandamus can issue *only where [a municipality] has failed to perform a ministerial duty . . . which [requires] the exercise of neither judgment nor discretion*.") (emphasis added).

We conclude that mandamus was inappropriate in this case because: (1) the act Landowners sought to have performed is not a ministerial act; (2) Landowners did not establish a mandatory duty, imposed by law, requiring Norristown to repair the culvert; and (3) other adequate and appropriate remedies are available to Landowners. Considering that mandamus is such an extraordinary remedy, we agree with Norristown that Landowners failed to establish a clear legal right to relief.[9]

law or a statute creating a cause of action; (2) caused by the negligent act of the local agency or its employees acting within the scope of their employment; and (3) caused by one of the specific acts enumerated in Section 8542(b) of the Tort Claims Act. *Id.* In particular, Section 8542(b)(5) of the Tort Claims Act provides an exception to governmental immunity for "[a] dangerous condition of the facilities of steam, sewer, water, gas[,] or electric systems owned by the local agency and located within rights-of-way." 42 Pa. C.S. § 8542(b)(5); *see Medicus v. Upper Merion Twp.*, 475 A.2d 918, 921 (Pa. Cmwlth. 1984) (holding that, under the utilities exception of the Tort Claims Act, an underground culvert or storm drain used for handling the flow of surface water was a "sewer" for which the municipality can be liable for injuries caused by a dangerous condition).

[9] In light of our ruling on the mandamus issue, which is dispositive of the appeal, we need not reach Norristown's other appellate issues.

## **Conclusion**

Accordingly, because we conclude that the Trial Court erred in granting mandamus relief, we reverse the Trial Court's Order and remand this matter to the Trial Court for further proceedings on the remaining causes of action in Landowners' Complaints.

_____
ELLEN CEISLER, Judge


Judge Fizzano Cannon did not participate in the decision of this case.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ludovico Cognata and Alberto Cognata :
                                          :
         v.                            :
                                            :
Municipality of Norristown and       :
Norristown Municipal Council         :
                                            :
Theodore Hoffman, Michael Hoffman,   :
Penn & Arch, LLC, Component        :
Enterprises, Inc.                      :
                                            :
         v.                            :    No. 1326 C.D. 2018
                                            :
Municipality of Norristown and       :
Norristown Municipal Council         :
                                            :
Appeal of: Municipality of Norristown   :
and Norristown Municipal Council     :

# **O R D E R**

AND NOW, this 23rd day of July, 2019, the Order of the Court of Common Pleas of Montgomery County (Trial Court) is hereby REVERSED, and this matter is hereby REMANDED to the Trial Court for further proceedings consistent with the foregoing Opinion.

Jurisdiction relinquished.

                                        _____
                                        ELLEN CEISLER, Judge